People agt. Vanderbilt.

erally based the constitutionality of the law, the question is now in course of being reviewed in the court of appeals and will probably be disposed of in that court during the present month so that the community can be kept in suspense but a brief time as to the law, so far as regards the judicial authority of this state; and, in my judgment, the latitudinarian rules of construction of the constitution of the United States, adopted by this court in the seventh district, as announced by two of the judges, were so novel and so full of peril to the institutions of the country, to its sound and prosperous constitutional government, that I did not feel at liberty to allow them to pass without expressing my dissent from them as well as from the result to which they lead.

Holding, therefore, that these treasury notes are not money, nor a legal tender for private debts, it follows that the mortgage is not paid, and judgment is given for the defendant.

## COURT OF APPEALS.

THE PEOPLE OF THE STATE OF NEW YORK, respondents agt. CORNELIUS VANDERBILT, appellant.

The building of a *crib* or *pier* in the waters of the harbor of New York city is a *public nuisance*, unless it is authorized by some power competent to confer such authority.

By a resolution of the mayor and common council of New York, in May, 1853, permission was given to the defendant to widen a small pier on the south side of pier No. 1, North river, on the southerly side, so as to make the same forty feet wide, and that it be extended parallel with pier No. 1 to the exterior line, at a distance of 150 feet from said pier, under the direction of the street commissioner.

*Held,* that the mayor and common council had no authority to grant the defendant such permission. It was an erection in a public harbor for private purposes, which obstructed the right of the public to the use of navigable waters, and constituted a *purpresture,* and *per se* was a *public nuisance.*

The "Act to provide for the expense of *extending the battery,* in the city of New York, and for other purposes," passed March 27th, 1821, did not authorize the

common council to pass such resolution, because the erection was for private pur-
poses, and not for extending the battery.
The remedy to prevent the erection of a purpresture and nuisance in a bay or navi-
gable river, is *by injunction at the suit of the attorney-general.*

*March Term,* 1863.

THE case shows that the defendant, after the 17th day
of April, in the year 1857, entered into and upon the wa-
ters of the harbor of New York, at a point south of pier
No. 1, North river, and north of Castle Garden, and com-
menced and continued the erection of a pier in said wa-
ters.   This action was commenced to restrain the defend-
ant from enlarging such pier.   (See report of the case, at
general term, 24 *How. Pr. R.*, 301.)

WM. ALLEN BUTLER, *for plaintiff.*
C. A. RAPALLO, *for defendant.*

EMOTT, J.   It cannot be doubted that the crib or pier
which the defendant commenced erecting in the waters
of the harbor of New York was a public nuisance, unless
he was authorized to build such a structure at that place
by some power competent to confer such authority.   *Wool-
rych* says : " An obstruction in a public river is a nui-
sance," such as the erection of a wharf ." so as to narrow
the river ;" and " at the common law any encroachment
upon a public stream was considered to be purpresture ;
that is to say, the making of that several and private
which ought to be common to many." ( *Woolrych on Wa-
ters, Law Lib., 4th series, vol.* 53, *pp.* 192, 195.)   It was held
in *Hart* agt. *The Mayor of Albany,* (9 *Wend.,* 571,) that it
is not lawful for an individual, without grant, to con-
struct and moor a floating storehouse or vessel for the re-
ceiving and delivering of goods and merchandise in any
public river, or in any port or harbor, or in the basins or
docks thereof; and that such permanent appropriation
and exclusive occupation of a public river, &c., is an ob-
struction to its free and common use, and is indictable

as a public nuisance. (*See The People* agt. *Cunningham,* 1 *Denio*, 524.)

The defendant claimed at the trial, and still claims, that he was authorized to construct the proposed pier by a resolution of the common council of the city of New York, which was passed by such council, and approved by the mayor of that city on the 16th day of May, 1853. By that resolution permission was attempted to be given to the defendant to widen a small pier on the south side of pier No. 1, North river, on the southerly side, so as to make the same forty feet wide, and that it be extended parallel with pier No. 1, to the exterior line, at a distance of one hundred and fifty feet from said pier, under the direction of the street commissioner.

The mayor and common council of New York had no authority to grant the defendant such permission. It has been held in England that a legal grant from the crown cannot make an erection in a public river for private purposes legitimate ; and that the right of the public to the unobstructed use of navigable waters is paramount to any right of property in the crown. (*Woolrych on Waters*, Law Lib., 4th series, vol. 53, p. 194.)

The defendant's counsel insists that the " Act to provide for the expense of extending the battery in the city of New York, and for other purposes," passed March 27, 1821, (*Laws of* 1821, *p.* 158,) authorized the common council of that city to pass the resolution in question. But he is mistaken. For it is obvious that the defendant was constructing the proposed pier for private objects, and not for the purpose of extending the battery ; and the act referred to, after providing for the extension of that part of the city called the Battery " into the bay and North and East rivers," not exceeding six hundred feet, declared that the title to the land that distance under the water was vested in the mayor, aldermen and commonalty of the city of New York, " to remain for the

purpose of extending the said Battery for a public walk, and for erecting public buildings and works of defence thereon, but without any power to dispose of the same for any other use or purpose whatsoever, and without any power of selling it, or any part thereof."

The defendant sank the crib, and was constructing the proposed pier further into the waters of the bay and North river than any person could lawfully erect one, according to chapter 763 of the Laws of 1857, (*vol.* 2, *page* 638,) or chapter 522 of the Laws of 1860, (*p.* 1062.) The defendant cannot avoid liability for what he did and intended to do, on the ground that the proof does not show that the people sustained or would sustain any actual damages by the crib or proposed pier. It was held in the case of *The King* agt. *Ward*, (4 *Adol. & Ell.*, 384,) on a trial of an indictment for a nuisance in a navigable river and common king's highway, called the harbor of Cowes, by erecting an embankment in the water-way, that a finding of the jury that the embankment was a nuisance, but that the inconvenience was counterbalanced by the public benefit arising from the alteration, amounts to a verdict of guilty; also that it is no defence to such an indictment, that although the work be in some degree a hindrance to the navigation, it is advantageous in a greater degree to other uses of the port.

The crib sank by the defendant and the proposed pier were a purpresture, and were *per se* a public nuisance. (*See Waterman's Eden of Injunctions, vol.* 2, *p.* 259, *ch.* 11.) The offer, therefore, of the defendant's counsel to prove, by the testimony of witnesses, that the crib and proposed pier were not, and would not be, an actual nuisance, and would not injuriously interfere with or affect the navigation of the river or bay, was properly overruled.

The remedy to prevent the erection of a purpresture and nuisance in a bay or navigable river is by injunction at the suit of the attorney-general. (*Wat. Eden of Injunc-*

*tion, vol.* 2, *ch.* 11; *Davis* agt. *The Mayor, &c. of New York,* 4 *Kern.,* 526; *The Attorney-General* agt. *Richards,* 2 *Anstruther,* 603.)

In the case last cited, the information stated that the defendants had erected a wharf or key, two docks and other buildings, between high and low water-mark, in Portsmouth harbor, so as to prevent the boats and vessels from sailing over that spot, or mooring there, &c., and prayed that the defendants might be restrained from making any further erections; that those made might be abated and the harbor restored to its ancient situation; and the court decreed that the buildings be abated.

The judgment in the case at bar is, that the defendant be restrained from erecting the proposed pier, &c., and that he remove the crib within thirty days after service upon him of a copy of the judgment.

No authority has been cited to show that it was erroneous to require the defendant to remove the crib, and I think there is none. This part of the judgment is right upon principle, and is somewhat supported by the case of *Attorney-General* agt. *Richards,* (*supra,*) and it ought to stand.

The judgment of the supreme court should be affirmed, with costs.

SELDEN, J., delivered an opinion for affirmance (not yet handed the reporter) differing somewhat from the preceding—holding that the defendant's act was not a purpresture, though a nuisance. All the judges concurred in the result.