NEW YORK PRACTICE REPORTS. 511

People agt. N. Y. and Staten Island Ferry Co.

# SUPREME COURT.

## THE PEOPLE OF THE STATE OF NEW YORK agt. THE NEW YORK AND STATEN ISLAND FERRY COMPANY.

*The illegal erection of piers into New York bay on the eastern shore of Staten Island.*

Where the owner of property in New York bay at Staten Island claims under a patent formerly — many years ago — granted by the state to a patentee, extending the patent line from low-water mark 500 feet out into the bay, he cannot legally erect a pier into the bay beyond that line. Any erection beyond that line is subject to removal by the people of the state in an action for that purpose, notwithstanding the owner claims that the erection does not extend to the line defined as a limit by the harbor commissioners under the act of the legislature of 1857.

Under the act of 1857 the legislature, as they had the constitutional power to do, defined and regulated the manner of building and erecting piers around New York and Staten Island, into the rivers and bay, by requiring them to be of a specified width and to have intervening water spaces between them of at least 100 feet.

It appears that the defendant's dock or pier was not only erected beyond the patent line eastwardly into the bay, but did not have an intervening space of "at least 100 feet" between it and the adjoining pier upon its south side, as required by the act of 1857, consequently the plaintiffs were entitled to a judgment of removal of the pier from their property.

*New York Special Term, June,* 1875.

*Henry E. & Julian T. Davies,* for plaintiffs.

*Nelson & Cooke,* for defendants.

WESTBROOK, *J.* — This is an action commenced by the people to compel the defendant to remove a pier or dock, which it has erected from the Staten Island shore into the

bay of New York upon the grounds: First, that the pier does not leave an intervening space of "at least 100 feet," between it and an adjoining pier upon the south, as required by section 2, of chapter 763, of the Laws of 1857; and, second, because a portion of said pier, upon which is erected a building used by a yacht club, extends into the harbor or bay beyond the grant which the defendant, as assignee of John Gore, has from the state.

The action is defended upon the theories that so much of the structure as lies west of a line designated and marked upon the maps as "line of 500 feet from low-water mark," is located upon property of which the defendant is the absolute owner, and that no act of the legislature can restrict the use thereof by such owner, and that the remainder thereof, which lies east of the line aforesaid, is authorized by the act of 1857, to which reference has been made. The facts of the case are undisputed, and it presents questions of law only.

On the 11th day of March, 1818, the people of the state of New York, by letters patent of that date, granted unto John Gore the lands under water in front of the adjacent uplands owned by him, beginning at low-water mark and extending out into the bay 500 feet. This grant to Gore covers the lands claimed by the defendant, and also those claimed by the Staten Island Railway Company, the former possessing the northern part thereof, and the latter the southern. The exterior or eastern line of the Gore patent was that to which reference has been before made, and is marked upon defendant's map as "line of 500 feet from old low-water mark."

By an act of the legislature of this state, passed March 30, 1855 (*chapter* 121, *Laws of* 1855), a board of five commissioners was created, as declared in the title thereof, "for the preservation of the harbor of New York from encroachments, and to prevent obstructions to the necessary navigation thereof."

On the 17th of April, 1857, another act, entitled "An act to establish bulkhead and pier lines for the port of New

York," was passed. This act established "the bulkhead line, or line of solid filling, and the pier line," upon the Staten Island shore, as well as upon the New York city shore, and sundry other points designated in said act. The second section of such act declares: "It shall not be lawful to fill in with earth, stone or other solid material, in the waters of said port, beyond the bulkhead line or line of solid filling hereby established, nor shall it be lawful to erect any structure exterior to said bulkhead line, except the sea wall mentioned in the first section of this act, and piers which shall not exceed seventy feet in width respectively, with intervening water spaces of at least 100 feet; nor shall it be lawful to extend such pier or piers beyond the exterior or pier line, nor beyond or outside of the said sea wall." Upon the construction of this act and its constitutionality this cause depends.

"The bulkhead line, or line of solid filling," established by the act of 1857, is not disputed. All the maps indicate this line alike. Prior to year 1857, "The Staten Island Railway Company" had built a pier extending east from the old line of solid filling. This did not cover the whole of their land under water, but it immediately adjoined the property of the present defendant upon the north. Since 1857 (as I understand the evidence), at the eastern extremity of such pier, the same company have constructed a dock or pier extending north and south the whole breadth of its property, which, connected as it is with the pier running out from the solid filling, forms a letter L, the foot of which, however, is reversed, i. e., turning to the left, and not the right. That which is called herein the pier extends from the solid filling 106 feet, and is of piles with a plank covering, and is in width, north and south, eighty-one feet. The eastern extremity of this pier (the foot of the L) is constructed, beginning on the south line of the defendant, first of solid filling, twenty-five feet by twenty-four feet, then follows, going southwardly, a space of pile work planked thirty-one feet ten inches by twenty-four feet, then solid filling again, and so

alternating the whole breadth of the property of the railway company. When the structure of "The Staten Island Railway Company" was made, there was no pier to the north or south of it, and that of the defendant has been since erected. Webster's Dictionary defines a pier as "a projecting wharf or landing place," and within this definition the erection of the Staten Island Railway Company must certainly be regarded. Whether the addition put to it since the act of 1857 (assuming that I am right in the date of the erection), viz., the foot of the L, and extending beyond the bulkhead line established by the act of 1857, is legal or not, is not necessary to be determined. Probably the solid filling is illegal, but with this removed there would still remain the pier of the railway company, constructed of piles, and called upon the map, "Stapleton Landing." The structure of the defendant which is sought to be removed immediately adjoins that of the railway company, and as there is no space between this pier (that of railway company) and that of defendant, as required by the act of 1857, the simple question which the point presents is : Did the legislature have the power to require the space to be left between piers as established by that law ?

I have no doubt that the defendant acquired ownership by the patent to Gore. It being a grant by legislative authority, it presents a different question from that presented by the cases cited by the counsel for the plaintiff and that of *Martin* agt. *Waddell* (16 *Peters*, 369). These cases present the question of the power of the king of England, without an act of parliament, to pass title to lands under water. In this the question is presented as if the king and parliament had concurred in the grant, as the patent to Gore issued under and by virtue of an act of the legislature, and this distinction is well recognized (*See opinion of* BROWN, *J., in Lownedes* agt. *Dickerson*, 34 *Barb.*, 586). But whilst I have no doubt of the validity of the grant, I have none either as to the power of the legislature to pass the act of 1857. By it the defendant is not deprived of its property, but the use

is regulated. The mode and manner of enjoyment of property by the owner, its use, and the character of the structures to be erected thereon, and the space to be left between them, are frequently regulated by statute, and it is this and this only which the act of 1857 accomplishes. The patent to Gore, as the acts under which it was made show, was for the promotion of commerce and was accepted for that purpose. The mode of its use must necessarily be under legislative control, and as this is all the law has attempted, the structure of the defendant must be pronounced illegal for the reason that it violates the act of 1857.

The structure of the defendant, which is east of the " line of 500 feet from old low-water mark," is beyond its grant. This fact is conceded, but it is claimed that because the act of 1857, before referred to, forbids the erection of piers only when beyond the " harbor commissioners' pier line," and as the defendant's pier is within that limit, therefore it is not unlawful. This argument proceeds upon the theory that only that which is expressly forbidden is unlawful, and in my judgment it is unsound. It is one thing to say, as has been done, in no case shall any person, whether his grant extends beyond the pier line established or not, erect a pier beyond such a line ; and quite another thing to say that every person who does hold a grant of lands under water, though not extending as far as such pier line, may build up to such line. The defendant must show, to defend itself, an *express* permission to erect its structure upon property of the state, and to which no title has been conveyed. The act was general in its forbidding, because some grants may have gone beyond the pier line, but it does not purport to convey, nor does it grant to any party whatsoever a foot of property of the state. As to this portion of its erection the defendant is precisely within the case of *The People* agt. *Vanderbilt* (26 *N. Y.*, 287), having no title to the premises it occupies, and no permission or license to erect its structures. This part of the pier on which the club-house stands, and all that

is east of the Gore grant, are not located upon the defendant's property, and its erections have not been sanctioned or allowed by any act of the people.

For the reasons indicated, the plaintiffs are entitled to the relief demanded in the complaint. I am not prepared to hold and do not hold that because the defendant's pier projects beyond that of " The Staten Island Railway Company," thus rendering the enjoyment of the latter's property more difficult, that it can be removed for that reason. If the defendant's pier was constructed as the law directs and placed upon its own property, the complaint would be dismissed, as The Staten Island Railway Company could extend its own pier, and thus avoid that difficulty. The relief is granted because the defendant's pier, west of the line of its grant, is in violation of the act of 1857 regulating the mode of the construction of piers, and all east of that line is upon property of the plaintiffs, who have never authorized its erection.

Before closing, however, it may be well to consider the point made by the defendant, that the plaintiffs are not entitled to relief, because on a motion made by the defendant to modify the injunction, the attorney-general stipulated that it might be so modified as to permit it (the defendant) to strengthen the pier then built and complete the club-house. The suit was pending for the removal of the entire structure, and that was not discontinued. The continuance of the suit and the consent must be read together. The result of the controversy was in doubt, and the preservation of a structure *pendente lite*, if the defendant was willing to spend money for that purpose, and the plaintiff's consent thereto, do not make a consent to perpetually maintain the structure. The continuance of the action limits the effect of the stipulation, and shows its objects. The defendant could not have been misled, and cannot therefore set up an estoppel.

The plaintiffs are entitled to judgment with costs.