THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENTS, *v.* THE NEW YORK AND STATEN ISLAND FERRY
COMPANY, APPELLANT.

*Letters patent of land under water — right of patentee under — subject to legislative
prescription of mode and manner of enjoyment — chap. 522 of 1860 — chap.
763 of 1857 — Remedy provided by statute — when a substitute for action by the
people — Extra allowance — basis for.*

The rights of a patentee from the State, holding land under the authority given
to the commissioners of the land office to issue letters patent of land under
water, are subject to the power of the legislature to prescribe the mode and
manner of enjoyment by the owner, its use and the character of the structures
to be erected thereon, and the space to be left between them.

Section 3 of chapter 522 of 1860 does not repeal that portion of chapter 763
of 1857 regulating the building of piers in the port of New York; nor does
the power conferred upon the pilot commissioners by the act chapter 522 of
1860, to protect the harbor against all encroachments, provide a remedy,
which is a substitute for or which takes away the right of the attorney-general
to bring an action for that purpose.

In an action in which the plaintiff seeks the destruction of property, in part as a
public nuisance and in part as a purpresture, the right to have the property
exist at the place where it has been constructed is of necessity involved, and
the value of the property as constructed is a proper basis for an extra allow-
ance. (DANIELS, J., dissents.)

APPEAL from a judgment entered upon the findings of the court
upon trial at Special Term, in an action commenced by the people
to compel the defendant to remove a pier, or dock which it had
erected, from the Staten Island shore into the bay of New York,
upon the grounds: 1st. That the pier did not leave an inter-
vening space of at least " one hundred feet " between it and an
adjoining pier upon the south, as required by section 2 of chapter
763 of the Laws of 1857. And, 2d. Because a portion of said pier,
upon which is erected a building used by a yacht club, extends
into the harbor or bay beyond the grant which the defendant, as
assignee of John Gore, had from the State. The facts stated in
these two grounds were found by the court at Special Term.

*Erastus Cooke*, for the appellant.

*Henry E. Davies, Julien T. Davies* and *James McNamee*, for
the respondents.

DAVIS, P. J.:

The learned judge before whom the case was tried at Special Term examined all its meritorious questions, in an elaborate and able opinion. A careful examination on our part leads us to the same conclusions at which he arrived, and we therefore adopt his opinion as our own. The opinion is as follows:

"WESTBROOK, J. This is an action commenced by the people to compel the defendant to remove a pier or dock, which it has erected from the Staten Island shore into the bay of New York, upon the grounds: 1st. That the pier does not leave an intervening space of at least "one hundred feet" between it and an adjoining pier upon the south, as required by section 2 of chapter 763 of the Laws of 1857; and, 2d. Because a portion of said pier, upon which is erected a building used by a yacht club, extends into the harbor or bay beyond the grant which the defendant, as assignee of John Gore, has from the State.

The action is defended upon the theories, that so much of the structure as lies west of a line designated and marked upon the maps as "line of 500 feet from low-water mark" is located upon property of which the defendant is the absolute owner, and that no act of the legislature can restrict the use thereof by such owner; and that the remainder thereof, which lies east of the line aforesaid, is authorized by the act of 1857, to which reference has been made. The facts of the case are undisputed, and it presents questions of law only.

On the 11th day of March, 1818, the people of the State of New York, by letters patent of that date, granted unto John Gore the lands under water in front of the adjacent uplands owned by him, beginning at low-water mark and extending out into the bay 500 feet. The grant to Gore covers the lands claimed by the defendant, and also those claimed by the Staten Island Railway Company, the former possessing the northern part thereof, and the latter the southern. The exterior or eastern line of the Gore patent was that to which reference has been before made, and is marked upon defendant's map as "line of 500 feet from old low-water mark."

By an act of the legislature of the State, passed March 30, 1855 (chapter 121, Laws of 1855), a board of five commissioners

was created, as declared in the title thereof, "for the preservation of the harbor of New York from encroachment, and to prevent obstruction to the necessary navigation thereof." On the 17th of April, 1857, another act entitled "An act to establish bulk-head and pier lines for the port of New York" was passed. This act established "the bulk-head line, or line of solid filling and the pier line," upon the Staten Island shore, as well as upon the New York city shore, and sundry other points designated in said act.

The second section of such act declares "it shall not be lawful to fill in with earth, stone or other solid material, in the waters of said port, beyond the bulk-head line, or line of solid filling hereby established, nor shall it be lawful to erect any structures exterior to said bulk-head line, except the sea wall mentioned in the first section of this act, and piers which shall not exceed seventy feet in width, respectively, with intervening water spaces of at least 100 feet, nor shall it be lawful to extend such pier or piers beyond the exterior or pier line, nor beyond or outside of the said sea wall." Upon the construction of this act, and its constitutionality, this case depends.

The bulk-head line, or line of solid filling established by the act of 1857 is not disputed. All the maps indicate the line alike. Prior to the year 1857 the Staten Island Railway Company had built a pier extending east from the old line of solid filling. This did not cover the whole of their land under water, but it immediately adjoined the property of the present defendant upon the north. Since 1857 (as I understand the evidence), at the eastern extremity of such pier the same company have constructed a dock or pier, extending north and south the whole breadth of its property, which, connected as it is with the pier running out from the solid filling, forms a letter L, the foot of which, however, is reversed, *i. e.*, turning to the left and not to the right. That which is called herein the pier, extends from the solid filling 106 feet, and is of piles, with a plank covering, and is in width (north and south) eighty-one feet. The eastern extremity of this pier (the foot of the L) is constructed, beginning on the south line of the defendant, first, of solid filling, twenty-five feet, then follows, going southwardly, a space of pile work, planked, thirty-one feet ten inches by twenty-four feet, then solid filling again,

and so alternating the whole breadth of the property of the railway company.

When the structure of the Staten Island Railway Company was made, there was no pier to the north or south of it, and that of the defendant has been since erected.

Webster's dictionary defines a pier, "a projecting wharf or landing place," and within this definition the erection of the Staten Island Railway Company must certainly be regarded. Whether the addition put to it since the act of 1857 (assuming that I am right in the date of the erection), viz., the foot of the L, and extending beyond the bulk-head line established by the act of 1857, is legal or not, is not necessary to be determined. Probably the solid filling is illegal, but, with this removed, there would still remain the pier of the Railway Company, constructed of piles, and called upon the maps "Stapleton landing." The structure of the defendant, which is sought to be removed, immediately adjoins that of the Railway Company, and as there is no space between this pier (that of the Railway Company) and that of defendant, as required by the act of 1857, the simple question which the point presents is: Did the legislature have the power to require the space to be left between piers, as established by that law?

I have no doubt that the defendant acquired ownership by the patent to Gore. It being a grant by legislative authority, it presents a different question from that presented by the cases cited by the counsel for the plaintiff, and that of *Martin* v. *Waddell* (16 Pet., 369). These cases present the question of the power of the king of England, without an act of parliament, to pass title to lands under water. In this, the question is presented as if the king and parliament had concurred in the grant, as the patent to Gore issued under and by virtue of an act of the legislature, and this distinction is well recognized. (See opinion of BROWN, J., in *Lowndes* v. *Dickerson*, 34 Barb., 586.) But while I have no doubt of the validity of the grant, I have none either as to the power of the legislature to pass the act of 1857. By it the defendant is not deprived of its property, but the use is regulated. The mode and manner of enjoyment by the owner, its use, and the character of the structures to be erected thereon, and the space to be left between them, are frequently regulated by statute, and it is this and this

only which the act of 1857 accomplishes. The patent to Gore, as the acts under which it was made show, was for the promotion of commerce, and was accepted for that purpose. The mode of its use must necessarily be under legislative control, and as this is all the law has attempted, the structure of the defendant must be pronounced illegal, for the reason that it violates the act of 1857.

The structure of the defendant, which is east of the "line of 500 feet from old low-water mark," is beyond its grant. This fact is conceded, but it is claimed that because the act of 1857, before referred to, forbids the erection of piers only when beyond the "harbor commissioners' pier line," and, as the defendant's pier is within that limit, therefore it is not unlawful. This argument proceeds upon the theory that only that which is expressly forbidden is unlawful, and, in my judgment, it is unsound. It is one thing to say, as has been done, in no case shall any person, whether his grant extends beyond the pier line established or not, erect a pier beyond such a line, and quite another thing to say that every person who does hold a grant of lands under water, though not extending as far as such pier line, may build up to such line.

The defendant must show, to defend itself, an *express* permission to erect its structure upon property of the State and to which no title has been conveyed. The act was general in its forbidding, because some grants may have gone beyond the pier line, but it does not purport to convey, nor does it grant to any party whatsoever, a foot of property of the State. As to this portion of its erection the defendant is precisely within the case of *The People v. Vanderbilt* (26 N. Y., 287), it having no title to the premises occupied, and no permission or license to erect its structure. That part of the pier on which the club-house stands, and also all east of the Gore grant, are not located upon the defendant's property, and such erections have not been sanctioned or allowed by any act of the people. For the reasons indicated, the plaintiffs are entitled to the relief demanded in the complaint. I am not prepared to hold, and do not hold, that because the defendant's pier projects beyond that of the Staten Island Railway Company, thus rendering the enjoyment of the latter's property more difficult, that it can be removed for that reason. If the defendant's pier was constructed as the law directs and placed upon its own property, the

· complaint would be dismissed, as the Staten Island Railway Company could extend its own pier and thus avoid that difficulty. The relief is granted because defendant's pier, west of the line of its grant, is in violation of the act of 1857, regulating the mode of the construction of piers, and all east of that line is upon property of the plaintiffs, who have never authorized its erection. Before closing, however, as to the point made by the defendant, that the plaintiffs are not entitled to relief, because, on a motion made by the defendant to modify the injunction, the attorney-general stipulated that it might be so modified as to permit (the defendant) to strengthen the pier then built and complete the club-house. The suit was pending for the removal of the entire structure, and that was not discontinued. The continuance of the suit and the consent must be read together. The result of the controversy was in doubt, and the preservation of a structure *pendente lite*, if the defendant was willing to spend money for that purpose, and the plaintiffs consent thereto, do not make a consent to perpetually maintain the structure.

The continuance of the action limits the effect of the stipulation, and shows its object. The defendant could not have been misled, and cannot therefore set up an estoppel.

The plaintiffs are entitled to judgment, with costs.

The additional questions raised on this appeal, so far as they affect the merits of the case, are :

First. That the amendment, by section 3 of chapter 522 of the Laws of 1860, of An act to establish bulk-head and pier lines for the port of New York, passed April 17th, 1857 (ch. 763 of the Laws of 1857), was in effect a repeal of so much of the act of 1857 as regulated the building of piers.

The language of the amendatory section of the act is as follows: " An act entitled an act to establish bulk-head and pier lines for the port of New York is hereby amended so as to read as follows ;" the said bulk-head and pier line shall be altered so as to read as follows : " Beginning at an angle in the exterior water line of land under water granted to Governor Morris, etc.," and then follows a description of the bulk-head and pier line as so altered.

It is obvious that the sole intention of the legislature, by this

provision of the act of 1860, was to do nothing more than to change the bulk-head and pier line, as defined in the act of 1857, to accord with the description set forth in the amendment, and thereby better define the same, and to leave all the other provisions of the act of 1857 intact and in full force.   This intention appears by the reference previously made, in the act of 1860, to the act of 1857; and although the third section of. the act of 1860 is unskillfully drawn, there seems to be no difficulty in discerning and carrying out the intention of the legislature.   Both acts are to be read together, being in *pari materia,* and the description of. the bulk-head and pier line is now to be found in the second act.

Second.  That the power conferred upon the pilot commissioners by the act of 1860, to protect the harbor against all encroachments, provides a remedy which is a substitute for the action by the attorney-general, and that an action cannot be maintained, without showing some facts which render the statutory method ineffectual. We are of opinion that the remedy created by the act in question is cumulative, and does not take away the right of the people of the State to proceed by action to procure the abatement of any nuisance or purpresture in the waters of the harbor.   It would require plain words of negation to justify the court in holding that the remedies of the statute were taken away by provisions such as are contained in the act of 1860.   In this case there is neither any expression or necessary implication of such intention.

Third. The point that the defendants' rights, under the grant made by the State to John Gore, to the lands under water, cannot be taken from him except by the exercise of the right of eminent domain, and, upon due compensation, is, of course, well taken. The grant to John Gore gave to him only the ownership of the soil under water, but no right whatever to interfere with the right of the public in using the water for the purpose of navigation.   He cannot " so exercise his right of property as to obstruct or render inconvenient the navigation any more than the person who has the fee simple of a road can obstruct or annoy the passer over it." (Angell on Tide Waters, 64.)

The grant in question is therefore to be construed as though it expressly reserved to the legislature, the right to pass acts regulating the use of the waters of the harbor in the interests of the public,

and in so doing nothing is taken from the owner of the lands under water for which he is entitled to compensation. The law on the subject is well settled by numerous English and American authorities. (*Attorney-General* v. *Burridge*, 10 Price, 360, 372; *Williams* v. *Wilcox*, 8 Ad. & Ellis, 314; Lord Hale's Treatise [*De Partibus Maris*], part 2, chap. 7; *Attorney-General* v. *Parmeter*, 10 Price, 378; Woolrych on Water Rights, Law Library, vol. 78, chap. 1, p. 29; chap. 2, pp. 196, 197, 198; *Rogers* v. *Jones*, 1 Wend., 261; *Brink* v. *Richtmyer*, 14 Johns., 255; Hoffman on Estate and Rights of the Corporation of New York, vol. 1, p. 224; *People* v. *Vanderbilt*, 26 N. Y., 287; *People* v. *Vanderbilt*, 28 id., 396; *Del. and Hud. Canal Co.* v. *Lawrence*, 2 Hun, 163; *Gilman* v. *Philadelphia*, 3 Wall., 724; *Gould* v. *Hudson R. R. R. Co.*, 6 N. Y., 522.) The several exceptions to the admission of testimony, taken in the course of the trial, do not seem to us of any importance. It is difficult to see how the defendants could have been injured by the admission of the testimony offered, assuming it to have been improperly admitted and to have been wholly immaterial. But this is an equitable case in which there was no substantial conflict of testimony upon the material facts, and it is apparent that if the testimony objected to by the defendants had been excluded, the facts could not have been found otherwise than they have been by the learned justice. In such a case, even if it were held that the admission or rejection of evidence was technically irregular, we should not deem it our duty to reverse the judgment because of such error.

But we have looked at all the exceptions, and are of opinion that none of them were well taken.

Brown and Dubois were experts on the subject-matter of their testimony, and it was competent to prove by them what is known as a bulk-head and what is known as a pier.

There was no error in allowing proof of the size of the boats of the Staten Island Railroad Company. It appeared that they were accustomed to navigate the harbor at the point now obstructed by the pier, and it was entirely competent to show both the fact of navigation, and the kind of boats that had been used at this point, for that purpose.

These are the only exceptions to which our attention is called by

the points of the appellants, and we do not discover in them such force as calls upon us to interfere with the judgment.

The point is also made that so much of the judgment as provides for an extra allowance is erroneous. Ordinarily, this question would not come up upon an appeal from a judgment, but only upon an appeal from the order granting the extra allowance. After the order granting the allowance is made, the sum allowed becomes part of the costs to be adjusted, and upon an appeal from the judgment recovering costs, the court will not look behind the legal adjustment of costs, for the purpose of determining whether any of the items are or are not irregular.

But the peculiar form in which the judgment is entered in this case seems to make the question whether the court below had power to grant any allowance, a proper one for consideration here.

In *The Atlantic Dock Company* v. *Libby* (45 N. Y., 499), the court reversed an order allowing the plaintiff $500 as an extra allowance, on the ground that the value of the premises and machinery of the defendant was not the subject-matter involved in the action. The order for additional allowance had been based upon such valuation. The court does not hold that an additional allowance could not be granted in such an action upon a proper subject-matter. This case is distinguishable from that, in the fact that the plaintiffs seek the destruction of property in part as a public nuisance, and in part as a purpresture; and the right of the property to exist at the place where it has been constructed is of necessity involved. This gave clearly a subject-matter upon which the defendant, if successful in the suit, would be entitled to move for an additional allowance, because he could well say that the whole value of the pier, and the structures erected thereon, was involved in the right to maintain and use them. We think the same reasoning that would give to defendant the right to move for an additional allowance, is applicable in favor of the plaintiff when he recovers the judgment.

For that reason we hold that the additional allowance was not improperly granted. Judgment affirmed, with costs.

BRADY, J., concurred.

DANIELS, J.:

I do not think this a case in which an additional allowance of costs can be made according to sections 308 and 309 of the Code. But for the other reasons given I concur in the result of the opinion.

Judgment affirmed with costs.