(28 App. Div. 524.)

PEOPLE ex rel. HOWELL et al. v. JESSUP.

(Supreme Court, Appellate Division, Second Department. April 26, 1898.)

1. NAVIGABLE WATERS.
   The distinction between waters navigable in law, and those merely navigable in fact, where the tide does not ebb and flow, practically only affects questions of title to the soil, rights of fishery, and the like, and not the public right of navigation.

2. SAME—OBSTRUCTION.
   The owner either of the adjacent upland, or of the soil under a stream navigable in fact, is not authorized to construct over it a bridge which interferes with navigation, without the authority of the legislature, or other public officers to whom the legislature has delegated the power.

3. SAME—BRIDGE CONSTRUCTED BY TOWN.
   If the title to the land under water, where such a bridge is constructed, is in a town, and the bridge is constructed with the assent of the town, the erection does not constitute purpresture.

4. SAME—NUISANCE.
   A bridge constructed over a navigable stream without lawful authority constitutes a nuisance.

5. COLONIAL PATENT—CONSTRUCTION.
   The effect of the colonial patents which constituted the town of Southampton, and granted to it the land within its limits, was to confer upon it title to the lands under the Great South Bay, but subject to the superior public right to use them for all navigable purposes.

Appeal from special term.

Action by the people of the state of New York, on the relation of Mortimer D. Howell and others, against Nathan C. Jessup. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles M. Stafford, for appellant.

Timothy M. Griffing and T. E. Hancock, Atty. Gen., for respondents.

CULLEN, J. This action is brought by the people to compel the removal of a bridge erected and maintained by the defendant over the waters of the Great South Bay, in the town of Southampton, Suffolk county, under a resolution passed by the trustees of said town, as follows:

"Resolved, that Nathan C. Jessup be, and is hereby, given liberty to make a roadway and to erect a bridge across the Great South Bay, commencing at the south point of Potunk Neck; thence running southerly to the beach; the said bridge to be a drawbridge, of a width of not less than twenty feet; the height above the meadow, three feet; and the draw to be twenty feet wide; and the said Nathan C. Jessup shall not cause any unnecessary delay to those navigating the waters of said bay."

This is the sole authority that the defendant has for the construction and maintenance of this bridge. The bridge is a private one, and is not connected at either end with the public highway. The Great South Bay is a large sheet of water on the south side of Long Island, separated from the ocean, for most of its length, by a sand spit or beach, except at Fire Island, where there is an inlet, through which the waters of the ocean flow and ebb to and from the bay. The point at which the defendant's bridge is constructed is a long distance from the inlet, and towards the easterly end of the bay. The trial court has found that at this point the tide does not ebb and flow, though the water is salt. It has also found that this part of the bay is navigable for pleasure boats, and also for small vessels engaged in the transportation of coal, lumber, and other merchandise, and that it has been so navigated prior to the construction of the defendant's bridge; "that the navigation of said Great South Bay is obstructed by said bridge, and at times, when the winds are in a certain quarter, it is very difficult to sail through said draw,"—and, as a conclusion of law, decided that the bridge was a public and private nuisance, and should forthwith be abated. On the request of the defendant, the court further found that the draw or opening in the defendant's bridge was 20 feet in width, that the channel and highway in that part of the bay were about 50 to 75 feet in width, and that, if the bridge was constructed by lawful authority, it was no unreasonable obstruction to navigation. All these findings of fact are based on sufficient evidence, and their correctness will therefore be assumed.

As at the site of the bridge there is no rise of the tide, I suppose the waters of the bay at that point are not navigable, in the strict sense of the term, as known to the common law. But, even if they are to be deemed navigable waters, it would not affect the title to the land under water, as that was granted to the town of Southampton by the colonial patents which constituted the town, and granted the land within its limits. By these patents the town became vested with the ownership of all the "waters, lakes, ponds, brookes, streams, beaches, * * * harbour, highways, fishing, hawking, hunting, and fowling," within the bounds of the grant. This patent included the Great South Bay.

Trustees of Southampton v. Mecox Bay Oyster Co., 116 N. Y. 1, 22 N. E. 387. As the title to the land where the bridge was constructed was in the town, and the bridge was constructed with the assent of the town, no question of purpresture can arise; and the principle of the case of People v. Vanderbilt, 26 N. Y. 287, does .not apply. But, though not a purpresture, the question still remains whether the bridge was a nuisance. The distinction between waters navigable in law and those merely navigable in fact, where the tide neither ebbs nor flows, practically only affects questions of title to the soil, rights of fishery, and the like, and not the public right of navigation. This was so even at common law, for Lord Hale writes (De Jure Maris, c. 3):

"Again, there be other rivers, as well fresh as salt, that are of common or public use for the carriage of boats or lighters; and these, whether fresh or salt, whether they flow and reflow or not, are, prima facie, publici juris, common highways for men or goods, or both, from one inland town to another."

This doctrine is maintained in its full integrity everywhere in this country; many of the states going further, and holding that the same rule which applies to tide waters is equally applicable to proprietary ownership in the great fresh-water navigable streams. In this state, at one time, the latter was held to be the true rule (People v. Canal Appraisers, 33 N. Y. 461), though latterly we seem to have returned to the rule of the common law (Smith v. City of Rochester, 92 N. Y. 465). In the latter case it is said:

"Among other rights which pertain to sovereignty is that of using, regulating, and controlling for special purposes the waters of all navigable lakes or streams, whether fresh or salt, and without regard to the ownership of the soil beneath the water. This right is known as the 'jus publici,' and is deemed to be inalienable."

. Therefore, had the grants from the crown to the town of South-ampton been to private persons, though such persons would have acquired thereby title to the soil and also to the easement and privileges of the waters, the right of public navigation would be in no way impaired, nor the control over it parted with. I understand the defendant's counsel at this point to claim that as the patents to the town created a political organization or community, as well as granted title to lands, it is to be construed as granting to the government of the town the control over the public easement which the state would have were it not for the patents. Assuming that it was within the power of the sovereign, as representing both crown and parliament in newly-discovered countries, to make such a grant, I am of opinion that no such construction is warranted by the terms of the instrument. The waters of the harbors, as well as the lands, were granted to the town, as proprietors, and only such interests in the waters as at common law were the subject of proprietary rights passed by the patent. The language of the patents in this case is substantially the same as in those of other Long Island towns. In Trustees v. Strong, 60 N. Y. 56, under a similar grant, the exclusive right of the town to the fishery in that part of the waters of the South Bay lying within its bounds was upheld, but only as "subject to the superior public right to use them for all navigable purposes." The grant by the town of permission or licenses to construct piers, wharves, or similar structures in the

bay was not an exercise of control over the public right of navigation. As the title to the soil under the water was in the town, such structures could not have been erected without its permission.   Their erection would, as against the town, have been trespasses, the same as if they had been constructed without authority on the town's uplands.   It was on this ground that the decision in People v. Vanderbilt, supra, proceeded,—not that the pier erected by the defendant was an obstruction to navigation, but that it was placed on the plaintiffs' soil without their authority.   That the state may authorize the construction of a bridge or other structure which to some extent interferes with navigation, in the absence of federal legislation to the contrary, is unquestioned.   I can find no authority, however, for the claim that the owner either of the adjacent upland, or of the soil under a navigable stream, can construct a similar work without the authority of the legislature, or other public officers to whom the legislature has delegated the power. Any unauthorized obstruction of a navigable stream is a nuisance. Wood, Nuis. § 478.   A bridge is not like a wharf or pier.   The construction of the latter is a right of the riparian owner.   Piers and wharves, to some extent, obstruct navigation; but they are also substantial and material aids to it, for, without piers and wharves at which vessels might land, navigation would cease.   The question as to the legality of such structures, therefore, is not whether they obstruct navigation to some extent, but whether they constitute a material obstruction.   Canal Co. v. Lawrence, 2 Hun, 163, affirmed on opinion below 56 N. Y. 612.   A bridge, if public, may be as necessary, for general convenience, communication, and commerce, as the public waters which it spans.   But it in no way inures to the benefit or advantage of the particular public service that is carried on by navigation, though often it is necessary in the public interests to sacrifice or impair the highway by water for the benefit of the highway across the water.   The right to do this can only come mediately or immediately from legislative authority.   In Bridge Co. v. Smith, 30 N. Y. 44, it was held:

"There are three cases in which authority from the legislature is necessary to erect a bridge over a stream:  (1) Where the stream is navigable;  (2) where the state owns the bed of the stream;  and (3) where the right to take toll is desired."

I understand that by the term "navigable" was there meant any waters navigable in fact.   "The legislature alone has the right to determine whether, and to what extent, the public convenience requires an interruption of the public right of navigation."   Gould, Waters, § 139.   In Com. v. Coombs, 2 Mass. 489, it was held that general authority to the sessions to lay out highways did not authorize the laying out of a highway over a navigable river, so that the river might be obstructed by the bridge.   So, in this state, turnpike, plank-road, or bridge companies are not authorized to bridge any river or water course where the tide ebbs and flows, or which is navigable by sail vessels or steamboats.   Transportation Corporations Law, § 128.

We are of opinion, therefore, that the decision of the trial court, that the defendant's bridge was without authority of law, and per se a nuisance, is correct, and that the judgment appealed from should be affirmed, with costs.   All concur.