(24 Misc. Rep. 287.)

PEOPLE v. MOULD.

(Supreme Court, Equity Term, Columbia County. July, 1898.)

1. PURPRESTURE—RIGHT TO MAINTAIN—RIPARIAN OWNER.
   The owner of uplands down to the low-water mark of a navigable stream cannot maintain against the state a wharf over tide lands, and to the channel in front of his upland, without first obtaining from the commissioners of the land office a grant of the lands under water which it covers, since so much of the wharf is a purpresture. ·

2. SAME—NUISANCE OR OBSTRUCTION TO NAVIGATION.
   That the purpresture was not a nuisance or obstruction to the public right of navigation is immaterial.

Action by the people of the state of New York against Horatio D. Mould to remove a purpresture. Judgment for plaintiff.

Theodore E. Hancock, Atty. Gen., and A. Frank B. Chace & Sons, for the People.

Patterson, Bulkeley & Van Kirk, for defendant.

CLEARWATER, J. The facts, although left in some obscurity by the evidence, were upon the trial admitted to be as follows: In 1855, the legislature, by chapter 61 of the Laws of that year, authorized the commissioners of the land office, upon satisfactory proof that it would in no way unfavorably affect the navigation of the Hudson river, and would not be detrimental to the public interests, to make a grant of lands under the waters of the Hudson, in the town of Germantown, in the county of Columbia, sufficient to construct a dock, to the commissioners of highways of that town, in trust for the benefit of its inhabitants. The grant was made, and thereafter the highway commissioners built a wharf covering all the lands under water conveyed by it, which is commonly called the "Town Dock." About 1881, the defendant's predecessors in title, Lasher and Winans, applied to the commissioners of the land office for a grant of the land under the waters of the Hudson adjacent to and in front of their uplands, which then extended along the east shore of the Hudson southerly from the south line of the Town Dock. Opposition being made by the town, the application was withdrawn, and another application was presented for a similar grant, excluding a strip about 75 feet in length immediately southerly of the Town Dock, and extending westerly in the direction of the channel about 180 feet. To this application there was no opposition, and a patent was issued to the applicants for all the lands under the waters of the Hudson adjacent to their uplands, with the exception of the strip above described. There was no adjudication by the commissioners denying any portion of the original application. The defendant is the successor in title of Lasher and Winans to the uplands and the lands under water, and has a grant of the shore of this strip between high and low water mark. Prior to this action, and without obtaining any further grant, the defendant built a wharf across the entire front of his uplands, beginning at the southerly line of the Town Dock, thus building upon the 75-foot strip and in the direction of the channel as far out as

the channel front of the Town Dock. This wharf, while covering no lands under the waters of the Hudson below high-water mark not in front of and adjacent to the defendant's uplands, does cover this strip to which he has no title. Since its construction it has been used by the defendant and the public for mooring vessels, receiving and discharging cargoes, the embarkation and debarkation of passengers, and generally for purposes of travel, commerce, and navigation. It extends only to the channel or navigable part of the river, and there is no proof that it is an obstruction to the navigation of the stream.

The action is by the attorney general, in behalf of the people, to compel the removal of the wharf from the 75-foot strip of lands under water to which the defendant has no title, upon the ground that it is a purpresture. The defendant claims that, being the owner of the adjacent uplands, he had the right to build, and has the right to maintain, the wharf, notwithstanding he has no grant for the lands under water covered by it. We are thus brought to the consideration of the important question whether the owner of uplands down to the low-water mark of a navigable tide-water stream can maintain a wharf out to the channel in front of his upland without first obtaining a grant of the lands under water covered by it, from the commissioners of the land office, as against the state, in an action brought by the attorney general to compel its removal. A "purpresture" is defined by Littleton as a clandestine encroachment or appropriation upon lands or water that should be common or public (Co. Litt. 277b); and the remedy to prevent its erection or to compel its removal from waters within the ebb and flow of the tide of a navigable stream is suit on behalf of the people by the attorney general. 2 Wat. Eden, Inj. c. 11; Davis v. Mayor, etc., 14 N. Y. 526; Attorney General v. Richards, 2 Anstr. 603. If, therefore, so much of the wharf as covers the strip involved in this action is a purpresture, it cannot remain, and the action is in proper form.

A careful examination of the authorities cited by all the counsel engaged in the cause, and of such other cases as I have been able to find, leads me to the conclusion that in this state and in many others a littoral owner may, as against an adjacent proprietor, build or fill in out to the channel of a navigable tide-water stream either for his own use or that of the public, but that his ownership of the adjacent upland does not give him any title to or interest in the lands under water in front of his premises; and, if he builds upon such lands without first obtaining a grant from the commissioners of the land office, it is at the risk of being compelled to remove the erection at the suit of the state. The ancient rule at common law and the early rule here were less liberal, but have been broadened to conform to the necessities of our situation. As it stands now, it is lucidly and forcibly stated in the learned opinion of Judge Andrews in People v. New York & S. I. Ferry Co., 68 N. Y. 71. Judge Andrews says:

"The title to lands under tide waters within the realm of England were by the common law deemed to be vested in the king, as a public trust, to sub-

serve and protect the public rights to use them as common highways for commerce, trade, and intercourse. The king, by virtue of his proprietary interest, could grant the soil so that it should become private property; but his grant was subject to the paramount right of public use of navigable waters, which he could neither destroy or abridge. In every such grant there was an implied reservation of the public right, and so far as it assumed to interfere with it, or to confer a right to impede or obstruct navigation, or to make an exclusive appropriation of the use of navigable waters, the grant was void. In the treatise De Jure Maris (page 22), Lord Hale says: 'The jus privatum that is acquired to the subject, either by patent or prescription, must not prejudice the jus publicum, wherewith public rivers and arms of the sea are affected to public use.' And Mr. Justice Best, in Blundell v. Catterall, 5 Barn. & Ald. 268, in speaking of the subject, says: 'The soil can only be transferred subject to the public trust, and general usage shows that the public right has been excepted out of the grant of the soil.' The principle of the common law is founded upon the most obvious principles of public policy. The sea and navigable rivers are natural highways, and any obstruction to the common right or exclusive appropriation of their use is injurious to commerce, and, if permitted at the will of the sovereign power, would be very likely to end in materially crippling, if not destroying, it. The laws of most nations have sedulously guarded the public use of navigable waters within their limits against infringement, subjecting it only to such regulation by the state in the interest of the public as is deemed consistent with the preservation of the public right. A person claiming a special right in a navigable river or arm of the sea, as, for example, a right to obstruct it or to interfere in any way with the public easement, must show a clear title. It will not be presumed that the legislature intended to destroy or abridge the public right for private benefit, and words of doubtful or equivocal import will not work this consequence. Public grants to individuals, under which rights are claimed in impairment of public interest, are construed strictly against the grantee; for it is reasonable to suppose that, if they were intended to have this operation, the intention would have been expressed in plain and explicit language. The title to lands under tide waters in this country, which before the Revolution was vested in the king, became, upon the separation of the colonies, vested in the states within which they were situated. The people of the state, in their right of sovereignty, succeeded to the royal title, and, through the legislature, may exercise the same powers which previous to the Revolution could have been exercised by the king alone, or by him in conjunction with parliament, subject only to those restrictions which have been imposed by the constitution of the state and of the United States. The public right in navigable waters was in no way affected or impaired by the change of title. The state, in place of the crown, holds the title of trustee of a public trust; but the legislature may, as the representative of the people, grant the soil, or confer an exclusive privilege in tide waters, or authorize a use inconsistent with the public right, subject to the paramount control of congress through laws passed in pursuance of the power to regulate commerce given by the federal constitution."

Such grants are made in this state under the direction of the commissioners of the land office. They are made in the interest of commerce and navigation, which require that wharves and landing places should be provided for the mooring, loading, and unloading of vessels; and they are necessary, and indeed indispensable, adjuncts and incidents to commerce, and without them commerce and intercourse would be greatly embarrassed and restricted; but their erection by the owners of the adjacent upland on the soil of the state under tide water constitutes a purpresture, for which a remedy by abatement can only be had by an action like this, in behalf of the people, at the instance of the attorney general.

The New York & S. I. Ferry Co. Case has been repeatedly followed, and is approved in Ice Co. v. Schultz, 116 N. Y. 382, 22 N. E.

564, and in Sage v. City of New York, 154 N. Y. 61, 47 N. E. 1096. It, however, but affirmed the rule laid down by the court of appeals in People v. Vanderbilt, 26 N. Y. 287, and People v. Vanderbilt, 28 N. Y. 396.

The defendant relies largely upon the case of Rumsey v. Railroad Co., 133 N. Y. 79, 30 N. E. 654, but in that case the plaintiffs had a grant from the commissioners of the land office of the lands under water adjacent to and in front of their uplands, from high-water mark westerly to the channel bank of the river,—a fact which in some of the subsequent cases seems to have been overlooked. See opinion, page 82, 133 N. Y., and page 654, 30 N. E.; Rumsey v. Railroad Co., 114 N. Y. 423, 21 N. E. 1066; Id., 125 N. Y. 681, 25 N. E. 1080. In concluding his opinion in that case, however, Judge O'Brien says:

"It must now, we think, be regarded as the law in this state that an owner of land on a public river is entitled to such damages as he may have sustained against a railroad company that constructs its road across his water front, and deprives him of access to the navigable part of the stream, unless the owner has granted the right, or it has been obtained by the power of eminent domain. This principle cannot, of course, be extended so as to interfere with the right of the state to improve the navigation of the river, or with the power of congress to regulate commerce under the provisions of the federal constitution."

In City of Brooklyn v. Mackay, 13 App. Div. 105, 42 N. Y. Supp. 1063, cited by the defendant, Judge Goodrich, delivering the opinion of the court, while holding that a littoral owner could construct a pier without a grant of the lands under water in front of his upland, says:

"The structure, if built out below high-water mark, and into the navigable waters of the bay, was unquestionably a purpresture and a nuisance. The state could undoubtedly have compelled its removal, but, so long as it remained, the occupant was entitled to its possession, and could collect wharfage."

Nor is there anything to the contrary in his opinion, or in the opinion of Mr. Justice Cullen in Jenks v. Miller, 14 App. Div. 474, 43 N. Y. Supp. 927. The same distinction and limitation has been recognized in Connecticut and Wisconsin. Prior v. Swartz, 62 Conn. 132, 25 Atl. 398; Paine Lumber Co. v. U. S., 55 Fed. 854–866. In fact, a careful analysis of all the cases cited by the defendant, and of other cases of similar import, will disclose the distinction invariably recognized by courts and judges between those cases and the one at bar, for in no one of them of recognized authority, so far as I have been able to find, has it finally been held that a littoral owner can maintain a structure upon lands covered by the waters of an estuary of the sea or of a navigable tide-water stream as against the state, unless he first obtain a grant of such lands.

The defendant's position that there is no proof that what he did and intends to do would result in loss or actual damage to the people or to individuals does not relieve the situation, for to permit the maintenance of purprestures even if apparently harmless would gradually, perhaps insensibly, give rise to the belief that they were permissible. The stringency of the rule relative to obstructions in

a navigable stream is indicated by the case of Rex v. Ward, 4 Adol. & E. 384, where, on a trial of an indictment for a nuisance in a navigable river and common king's highway in the harbor of Cowes, caused by the erection of an embankment in the waterway, the jury found that the embankment was a nuisance, but that the inconvenience was counterbalanced by the public benefit arising from the alteration; and it was held that that amounted to a verdict of guilty, and that it was no defense to such an indictment that, although the work be in some degree a hindrance to navigation, it was advantageous in a greater degree to other uses of the port.

The interesting and important character of the question involved tempts to further discussion, but little can be added which will not savor of pedantry. I am of the opinion that so much of the defendant's wharf as covers the lands under the water of this 75-foot strip is a purpresture, and should be removed. A decree in conformity with this view, with suitable provisions for the prevention of further encroachments, may be framed, and will be settled by me on the usual notice. Costs are awarded to the plaintiff.