Sharp *v.* Mayor &c. of New York.

and such opinion more properly belongs to the judge before whom the motion shall be brought on. I think, however, so much of the motion as asked for a postponement of the argument upon the merits, until the necessary evidence from the referee can be obtained, should be granted. To enable the counsel for the comptroller to obtain such evidence, the other motion should be directed to be heard on the 15th of November instant, at 12 M. Copies of all affidavits and papers to be used thereon, in addition to those already served, to be served on the plaintiff's attorney four days prior thereto.

No costs granted on this motion.

[NEW YORK SPECIAL TERM, November 1, 1859. *Ingraham*, Justice.]

---

## JACOB SHARP *vs.* THE MAYOR &c. OF THE CITY OF NEW YORK.

The supreme court has power to relieve a party to an action pending in it from a judgment or order obtained against him by reason of the negligence, ignorance or fraud of his attorney.

The modern practice is for the court to relieve the client, without reference to the responsibility of the attorney, when a proper case for granting relief is established.

Although the legislature has conferred on the department presided over by the corporation counsel, in the city of New York, the management of all civil actions brought by and against the city, and he is therefore not bound to conform to the directions of either the mayor or comptroller, nor to follow their advice, yet the right conferred upon the corporation counsel does not place him beyond the control and direction of the court, if it appears that his action, or omission to act, is injurious to the city.

It is the right of the city officers to apply to the court for protection, and it is the duty of the court to grant it, if it is made to appear that the conduct of the counsel is prejudicial to the rights of the city.

Where, upon an application made by the comptroller of the city of New York, to set aside a judgment obtained against the city for over $40,000, on the ground of fraud and collusion, it appeared from the affidavit of the comptroller that the claim on which the action was based was unfounded and fraudulent, and that a good defense existed against the same; and it was shown that the corporation counsel had omitted to prove important facts

Sharp v. Mayor &c. of New York.

upon the trial which it was his duty to prove; that the questions arising in the case were so important, and involved in so much doubt, as not only to justify but to require counsel to take the opinion of the general term upon them; but that although the comptroller and the mayor had, after the rendition of the judgment, applied to the corporation counsel to appeal from the same, to the general term, he had refused to do so; *it was held* that a judgment recovered under these circumstances should not be permitted to stand; and the same was ordered to be set aside.

When an action has been referred, and tried by the referee upon the facts, and a report made by him, and a new trial is ordered, it is not, ordinarily, proper to send it back to the same referee.

The general practice is, to vacate the order of reference, on granting a new trial, on the application of either party, and to refer it to a new referee, if the cause is referable, or to retain it in court if it is not.

Whether a referee shall be retained or removed, when a new trial is ordered, is a question addressed to the discretion of the court; and from the decision thereon no appeal lies, *it seems.*

When a cause is referable only on consent, and the court sees fit to take it from the referee appointed therein, it cannot supply the vacancy. Hence the case must go back upon the calendar, or be deemed and treated as an arbitration.

THIS was an appeal from an order made at a special term, vacating a judgment recovered by the plaintiff, Sharp, against the defendants, the mayor, aldermen and commonalty of the city of New York, for $41,425.88. The application was made by Robert T. Haws, comptroller of the city, in behalf of the corporation, under the 5th section of the act of April 19, 1859, "to enable the supervisors of the city and county of New York to raise money by tax," and was founded upon an affidavit made by him (among other papers) in which he stated, that he had been comptroller of the city of New York since the first of January, 1859; that he had been informed and believed that a judgment had been recovered in this action for the sum of $41,425.88, on the first day of June, 1859, as appears by the record of the judgment; that the action was commenced before this deponent came into office, and appeared to have been referred on the 18th September, 1858, to M. G. Harrington, Esq.; that no consent appeared to have been given to the reference, and the deponent

believed that none was given ; that the defense of the action was managed by the corporation counsel and his assistants, and that he had declined, although requested by the deponent and the mayor, to make a case or bill of exceptions, or to take any other steps to review the decision of the referee ; that an execution had been issued upon the judgment and is now in the hands of the sheriff, who had levied upon and was threatening to advertise the property of the city, to satisfy the judgment ; that deponent believed that the claim upon which the action was based was unfounded and fraudulent ; that a good defense existed and still exists, against the same ; that the said defense was not properly or fully brought before the referee ; and that the recovery of the said judgment required the action of the deponent, as comptroller, under, and that it is a case within, the fifth section of the act entitled "An act to enable the supervisors of the city and county of New York to raise money by tax," passed April 19th, 1859, and that the said judgment ought to be set aside, or its execution suspended, the order of reference set aside, and the defendants permitted to defend the action anew. That the resolution reducing the rent of the ferry in question in this action, was passed upon the application of the ferry company, and was in writing, and that reports were made upon it in both branches of the common council. That although the resolution itself was given in evidence before the referee, yet, neither the said application, nor the said reports, nor the proceedings of the common council leading to the resolution, were given in evidence. That deponent was advised and believed, that all such evidence was competent and admissible, and ought to have been put in ; and he was also advised by his counsel that the defendants have a good and substantial defense upon the merits of the said action, and he verily believed the same to be true. That he, the deponent, under and by virtue of the said fifth section of the said act, had retained attorneys and counsel, to take all proper and necessary means to open and reverse the said judg-

ment, and to use the name of the said mayor, aldermen and commonalty for that purpose.

The following opinion was delivered by the judge who heard the motion at the special term, on deciding the same :

CLERKE, J.   " By the 5th section of an act entitled ' An act to enable the supervisors of the city and county of New York to raise money by tax,' (*Laws of* 1859, *p.* 1127,) the comptroller of the city, when he has reason to believe that any judgments of record against the mayor &c., or which may thereafter be recovered against them, have been obtained by collusion, or founded in fraud, not only is authorized, but required, to take all proper and necessary means to open and reverse the same, and to use the name of the mayor, aldermen and commonalty, and to employ counsel for that purpose.

The first question which arose in my mind when this motion was commenced before me was, whether a judgment could be opened on an application made by the comptroller, pursuant to this statute, when no collusion or fraud has been directly and affirmatively shown, but, nevertheless, palpable error in the proceedings, and palpable inadvertence and misconception of duty on the part of the defendants' counsel.

The comptroller swears that the action is unfounded and fraudulent, and this belief, whether afterwards substantiated by direct proof or not, is a sufficient justification to him for instituting the proceeding.   For this he is responsible to no one ; if he, sincerely entertaining the belief, brings the case before the court, and, on the motion, circumstances are disclosed, not amounting to collusion or fraud, except such fraud as may be inferred from the manner in which the reference was obtained—not amounting even to intentional breach of duty in any respect on the part of the defendants' counsel, but to gross error and mistake, by which a judgment for a large amount has been rendered against the defendants, and the time for remedying the error by appeal has been allowed to elapse, is it not the duty of the court, now that the case has been properly and legally brought before it, to give the defendants

an opportunity of being again heard and effectively defended ? Undoubtedly, judgments, as I said on a former occasion, not dissimilar to this, should not hastily, or for slight causes, be set aside ; but, where the mistake is manifest, and where an erroneous judgment has been obtained, through the inadvertence of counsel, or any other cause, which the defendant himself does not directly sanction, the administration of justice can never be hindered or embarrassed by opening the judgment, and giving the defendant an opportunity of being heard before the suitable tribunal. There are many reasons which satisfy me that the judgment in this action should be opened ; at this time and place it is not necessary that I should enumerate, or even indicate, all of them. It is sufficient to mention one : This is an action for representations by the defendants' agents, in relation to the extent of a right, which afterwards proved to be false, to the great alleged damage of the plaintiff.

A motion was made by the plaintiff's counsel for a reference, upon an affidavit stating that the trial of the action would occupy a *long time*, and that a number of separate and distinct *facts* would have to be proved by a large number of witnesses. The notice contained the name of the person whom the plaintiff wished to be appointed referee, requiring that the whole of the issues in the cause should be heard and determined by him. This motion, it appeared from the order, was opposed by the counsel of the corporation ; whether he actually attended to contest it, so that the judge was made aware of an earnest and real opposition, I am not informed ; but it is quite certain that he did not consent in writing, so that the order, to all intents and purposes, was a compulsory reference. Now, although by section 270 of the code, all or any issues in an action, whether of fact or law, or both, may be referred upon the written consent of the parties, section 271 provides that no reference can be *compulsorily* ordered — that is, without the consent of both parties — except the trial shall require the examination of a *long account;* in which case the referee may be directed to hear and decide the whole issue ; and ex-

Sharp *v.* Mayor &c. of New York.

cept where the taking of an account shall be necessary for the information of the court before judgment, or for carrying the judgment into effect. The order of reference in this action could have been granted only under the first subdivision of the latter section (271) — that is, on the ground that the trial required the examination of a long account. But no such pretense is set forth in the affidavit on which the application is founded ; it only states, that a number of separate and distinct facts will have to be proved by a large nnmber of different witnesses. Nor does it appear from the pleadings that the examination of a long account, in the legitimate sense of an *account*, could be involved. The plaintiff, indeed, states by way of aggravation of damages, that he was obliged to expend large sums of money, and to contract to pay large sums of money, but this could not constitute an account against the defendants, so as to bring it within the policy of the law, which compels, in actions growing out of certain dealings based upon an express or implied contract between the parties to an action, or their representatives, a departure from the ordinary method of trial in common law actions. No account of this description can be necessary in an action of tort, or sounding in tort ; indeed, if this were permitted, that provision of the constitution, declaring " the trial by jury, in all cases in which it has been heretofore used, shall be inviolate forever," could be always evaded. That is a constitutional right which cannot be too faithfully preserved ; and any legislative provision tampering with it should, at the least, be very strictly construed. Compulsory references should be rigorously confined to cases invoking the examination of a *bona fide* account in an action of contract, and should, also, be literally and truly, a *long* account. I, therefore, think that the court which granted the order of reference, most manifestly exceeded its power, and, as I believe from some misapprehension, committed a grave error. It would not, perhaps, be proper for me, sitting at special term, to review the action of another judge also at the special term, even in cases of this

description, where the order is voidable.   But, here is a statute calling upon the courts to interpose, as if in an emergency, and requiring a certain officer different from the head of the law department of the corporation, to make the application, and questions of vital importance, in which the interests of nearly a million of persons are concerned ; we find undoubted and flagrant error, forcing the trial of a difficult and complicated cause before a tribunal, in contravention of the constitution, and no effort made to rectify the wrong by appeal.   Shall I, under such circumstances, hesitate to afford to the defendants such a trial as they are constitutionally entitled to ?   I am confident, if the judge who granted the order of reference, heard the motion, which I am about to decide, and recalled the circumstances under which it was granted, that he would be the first to revoke his own order, and set aside the judgment founded upon it.

As I have already intimated, it is unnecessary to consider the other objections to the manner in which this judgment was obtained.   The order of reference alone would be fatal to it.

The judgment must be set aside, and the order of reference revoked, with costs."

From the order entered upon this decision the plaintiff appealed to the general term.

*David Dudley Field*, for the appellant.

*Wm. Curtis Noyes*, for the mayor &c. of New York.

*By the Court*, MULLIN, J.   This court has power to relieve a party to an action pending in it from a judgment or order obtained against him by reason of the negligence, ignorance, or fraud of his attorney.   The rule formerly was, that the party injured by the neglect or misconduct of his attorney was compelled to resort for relief to an action against the attorney,

Sharp *v.* Mayor &c. of New York.

unless it was shown that the attorney was insolvent, in which event the court could relieve. The remedy by action was a mere illusion, even against a solvent attorney, and hence the recent and, in my opinion, the more just practice is for the court to relieve the client without reference to the responsibility of the attorney, when a proper case for granting relief is established. There is no justice in permitting one party to obtain an undue advantage over another, through the neglect or misconduct of that other's attorney. Courts of law are not to be used by parties in effecting, through the forms of law, the ruin of a party who has employed an incompetent, negligent, or unworthy attorney. It is only when the courts require of their attorneys and suitors the exercise of entire good faith in the prosecution or defense of actions that they discharge their whole duty to the community.

In this case, the comptroller of the city made oath that the claim on which the action is based was unfounded and fraudulent, and that a good defense existed and still exists against the same. It further appears that after the rendition of this large judgment against the city, both the comptroller and the then mayor applied to the corporation counsel to appeal from the judgment, entered on the report of the referee, to the general term, and that he refused.

The legislature had conferred on the department presided over by the corporation counsel the management of all civil actions brought by and against the city. He was not bound, therefore, to conform to the directions of either the mayor or comptroller, nor to follow their advice. Yet, the right conferred upon the corporation counsel did not place him beyond the control and direction of the court, if it appeared that his action, or omission to act, was injurious to the city. It is the right of the city officers to apply to the court for protection, and it is the duty of the court to grant it, if it is made to appear that the conduct of the counsel is prejudicial to the rights of the city.

It becomes necessary to inquire into the conduct of the cor-

poration counsel, in order to ascertain whether the rights of the city have been neglected or unfairly yielded in their defense of this action.

I will not go into a history of the case, further than to refer to one or two facts which are disclosed by the papers, and which bear on the question under consideration.

The lease obtained by the plaintiff recites the resolution of the common council, on the 16th June, 1852, directing the leasing to the plaintiff of the slip at the foot of Wall street, or so much thereof as belongs to the city. The lease, which is dated the first day of July, conforms to the resolution, and uses, in the leasing clause, the very words of the resolution. The same qualifying words are used again in the habendum clause. It is further provided by said lease as follows : " And it is hereby mutually covenanted and agreed by and between the parties to these presents, and these presents are upon the express understanding that nothing herein contained shall be taken or construed to operate as a covenant by said parties of the first part, or their successors, for possession or quiet enjoyment by said party of the second part, &c. of the said ferry or right to ferriage, nor shall the same be taken or construed to interfere in any manner with any previous grants or rights, made by said parties of the first part  *   *   *   *   nor to operate further than to grant the possession of the estate, right, title, or interest, which the said parties of the first part may have, or lawfully claim, in said ferry and right to ferriage, by virtue of their charter," &c.

The plaintiff covenanted to pay to the city $20,000 per annum rent for the use of said ferry, in quarter yearly payments. At the time this lease was applied for, one Murray had or claimed the right to a portion of the slip, which rendered the slip useless for the purpose of a ferry. The right of Murray to the portion claimed by him was established by a judgment of the superior court, and the plaintiff, in order to get the use of the whole slip, rented of Murray his portion of the slip at the annual rent of $4000. In October, 1853, parties owning

the whole or some part of the interest of the plaintiff under said lease, applied to the common council to reduce the rent of the slip, and it was reduced to $5000 per annum. This fact was set up in the answer, but without any allegation as to whether the reduction thus made was in consideration of the claim of Murray to said slip. And it is certified by the referee that no evidence whatever was given on that subject, before him.

The gravamen of the plaintiff's action is the misrepresentation made by the agents of the city, and by means of the maps in the street commissioner's office, that the city owned the whole slip, whereas, in truth and in fact a portion was owned by said Murray. The referee finds, as matter of fact, that the plaintiff was misled in regard to the extent of the city's interest in the slip, and, as matter of law, that the possession of Murray was not notice to the plaintiff of his (Murray's) right.

Without deciding now whether the representations of the agents of the city were binding upon it, so as to give the plaintiff a right of action, or whether the possession of Murray was notice to the plaintiffs of his (Murray's) right, or whether the circumstances attending the reduction of the rent were legitimate evidence in the cause, or how far they might operate by way of defense to the action, it seems to me that each and all of the questions were so important, and involved in so much doubt, as not only to justify, but to require counsel to take the opinion of the general term upon each and all of them.

So large a claim should not be submitted to, unless it is based upon such clear principles of right and justice, as to remove any serious doubt as to its validity. When, therefore, the comptroller and mayor applied to the corporation counsel to appeal from this judgment, it was a request which he was in duty bound to grant.

It seems to me that no reason has been given why a judgment, recovered under these circumstances, should be permitted to stand. I will not assume to say whether the referee

was right or wrong in his decisions on the legal questions involved, but I do say that the omission to prove the facts and circumstances attending the reduction of the rent, and the motives and inducements which led to it, was a violation of professional duty, which the counsel owed to his client, the city.

I concur with Judge Ingraham, in his views as to the constitutionality of the act entitled " An act to enable the supervisors of the city and county of New York to raise money by tax," being chapter 489 of Laws of 1859. The provisions relating to applications to set aside judgments recovered against the city, are germain to the subject matter of the act, as disclosed in its title, and although the act may apply to judgments, the payment of which are not provided for by the act in question; yet it does properly apply to judgments then and thereafter to be rendered, and thus the constitutional objection is avoided. If any provision in regard to the setting aside of judgments or limiting the powers of the corporation counsel, could be incorporated in the act without coming in conflict with the act, then all its provisions must be deemed to be in force.

I do not deem it necessary, however, to pass upon the constitutional question. The court had, and has, ample power to protect the city, as it protects all other parties, from the consequences of the misconduct or neglect of their attorneys.

I am of the opinion, therefore, that the order of the special term, setting aside the judgment, was right. It is due to the city that a full and fair opportunity be afforded to it to try the case; but it seems to me that upon the papers in this case, neither the plaintiff nor his counsel is chargeable with any fault in reference to the judgment, and if the city desires to retry the cause, it should pay to the plaintiff the costs of the former action and of the motion.

When an action has been referred, and tried by the referee upon the facts, and a report made by him in the cause, and a new trial is ordered, it is not ordinarily proper to send it back

to the same referee, and for very obvious reasons—he has heard and seen the parties and their witnesses, he has formed his estimate of their credibility and of the force and effect of their evidence, and the defeated party enters upon a new trial before him, with the views and prejudices of the referee all against him. This is a current which the party ought not to be required to struggle against. The parties do not stand equal before the referee. He is not indifferent between them. No one would think of trying a cause a second time before the same jury, and although an intelligent referee would be less likely to retain or act on his convictions received on the former trial, yet he is but a man, and with the best intentions, he may be unable wholly to lay aside or forget his bias.

For these reasons the practice is becoming quite general to vacate the orders of reference on granting a new trial on the application of either party, and to refer it to a new referee, if the cause is referable, or to retain it in court if is not.

Whether a referee shall be retained or removed, when a new trial is ordered, is a question addressed to the discretion of the court, and the decision upon which it seems to me is not appealable.

This action was referable only on consent. When the court saw fit to take the case from the first referee, it could not supply the vacancy, and hence the case must go back upon the calendar, or be deemed and treated as an arbitration.

It has not been suggested that this action had been turned into an arbitration by means of the reference; and if not, the order of the judge at special term, setting aside the order of reference, was regular.

The order appealed from must be affirmed.

[NEW YORK GENERAL TERM, May 7, 1860. *Sutherland, Mullin* and *Bonney,* Justices.]