STATE OF MISSOURI, Respondent, v. EMMETT JONES,
Appellant.          .

April 11, 1882.

The gross ignorance, incompetence, and imbecility of the attorney of one
accused of murder, by reason of which the prisoner is deprived of essen-
tial rights and advantages guaranteed to him by law, necessary to a
proper defence, and inseparable from a fair trial, is sufficient ground for
setting aside a conviction and granting a new trial.

APPEAL from the St. Louis Criminal Court, LAUGHLIN, J.
*Reversed and remanded.*

DAVENPORT & NAPTON, W. F. McINTIRE, and F. B.
STRODE, for the appellant.

J. R. HARRIS, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was convicted of murder in the first de-
gree and sentenced to death.   It is not satisfactorily shown
to us that any error was committed by the court in the
conduct of the trial, but our attention is strongly called to
its refusal to sustain a motion for a new trial, based upon

the alleged ignorance, imbecility, and incompetency of the defendant's attorney, and his gross mismanagement of the cause.

Such a claim for reversal must be considered with great caution. The law has provided means whereby only persons qualified by learning, intellectual capacity, and good moral character, may be permitted to defend, in a court of justice, the reputation, property, or life of a fellow-citizen. This being done, the presumption necessarily follows that one who, by such means, has become armed with the proper credentials, will be competent to judge and faithful to adopt the best methods for securing a vindication of his client's rights; with the further presumption that the client, in selecting him, has elected to abide by the results of his skill and fidelity. It would be difficult to state with too much emphasis how the stern severity of the courts has generally compelled parties to stand by the consequence of negligent omission, blundering, or improper management by their attorneys in legal proceedings. This severity is generally justified by the most important considerations of public policy, as well as by the plain demands of justice, as between the parties to the cause. In civil cases the rule is broadly laid down that " neither the ignorance, blunders, nor misapprehension of counsel, not occasioned by the adverse party, is a ground for vacating a judgment or decree." *Boston* v. *Haynes*, 33 Cal. 31; *Farmers' Co.* v. *Bank*, 23 Wis. 249; *Burton* v. *Hynson*, 14 Ark. 32; *Burton* v. *Wiley*, 26 Vt. 430; *Quinn* v. *Wetherbee*, 41 Cal. 247.

But must there be absolutely no limit to the operation of this rule, even where a human life is at stake? If an attorney should become insane during the progress of a trial, and should thereupon take such steps as should insure the conviction of an innocent client, would no relief be possible? To say so, would be a libel on the law. In looking over this record, we find, in the performance of the counsel for the defendant, an exhibition of ignorance, stupidity, and

silliness that could not be more absurd or fantastical, if it came from an idiot or a lunatic. Among many similar examples, it was urged that no act of congress had ever authorized the state of Missouri to delegate to the city of St. Louis the power of enforcing the laws ; and that the state could not offer proof of the killing, without first proving affirmatively that the deceased was alive and that he did not kill himself. Objection was made to an officer's testifying, " because he undertakes to testify to a confession which he has already testified to in the other court, and because it is presumed that he will testify to the same in this court." It was objected that a confession made in Illinois could not be proved in Missouri, for want of jurisdiction, and because " the United States have made no law " to authorize it. These are only samples of the absurdities with which the record painfully abounds. It must be admitted, that an attorney who is ignorant or imbecile in a general way, may, nevertheless, conduct a cause with propriety, and omit nothing on the trial which would secure any right or advantage in his client's behalf. So much weight, at least, must be accorded to the fact of his admission to the bar. The record before us would indicate no reason for disturbing the judgment, if it contained no evidence of specific and gross mismanagement, by which the prisoner was deprived of some essential right guaranteed to him by law, necessary for his proper defence, and inseparable from a fair trial. Such evidence is not wanting on the present occasion.

No witness saw the fatal shooting. The prisoner, in aid of his application for a new trial, filed an affidavit, stating, in effect, that several weeks before the trial he had informed his attorney that he could prove by three several witnesses, naming them, that the deceased had repeatedly threatened to kill the affiant on sight ; but the said attorney, " by reason of his incompetency and imbecility, refused and neglected to bring said facts before the court." That the facts, as to

the homicide, were, that when the defendant approached the deceased, who was lying in a hammock, and requested him to settle certain bills, the deceased arose with an oath, saying he would kill the defendant, at the same time drawing a pistol ; that the defendant thereupon shot in self-defence.    The affiant further stated that he informed his attorney of these facts, and requested to be put upon the stand to testify to them.  But the said attorney, " by reason of incompetency, imbecility, and ignorance of the law, informed this affiant that the law was such that this affiant, being charged with murder, could not swear in his own defence."    The attorney filed a counter-affidavit, in which he " denies that the defendant was not fully informed as to his right to take the stand as a witness," and alleges that " it was concluded and agreed " that the defendant should not be put upon the stand, for the reason, in effect, that the testimony of the officer to the defendant's confession would accomplish all that was desired.

Considering the existing exigencies, it may be doubted whether the reason given by the attorney for keeping his client off the stand was any more creditable to his professional discrimination than the one stated by the prisoner. But waiving that, and also the seeming impropriety of an attorney's volunteering an affidavit to prevent his convicted client from getting a new trial, we think that the general aspect of the record so far corroborates the affidavit of the prisoner as to entitle him to the benefit of the doubt.    We feel constrained to act upon the supposition that the attorney, ignorantly or otherwise, advised his client against going upon the stand, on the ground that under a charge of murder, he could not lawfully testify in his own behalf.

Of course, we cannot assume that the jury would have believed the prisoner's testimony, if it had been given. But if it could have been considered in connection with the proofs of threats from the deceased by three other witnesses, as is alleged, there is at least a reasonable proba-

bility that the prisoner would have gotten off with conviction of a lower grade of crime and a lighter punishment than are recorded against him. In any event, he has been deprived, in the manner complained of, of a most important weapon for his defence, and one whose use, at his option, was guaranteed to him by law for whatever it might be worth.

While it is true, as was held in *Bowman* v. *Field* (9 Mo. App. 576), that there can be no relief against a mere negligent omission of an attorney presumably competent, and notwithstanding the rigid rule in ordinary civil cases, as before stated, yet there is high authority for the granting of relief in extreme cases, where the client's loss results, not merely from negligence, but from the gross ignorance, incompetence, or misconduct of the attorney. In *Sharp* v. *Mayor* (31 Barb. 578), a judgment was obtained against the city of New York for over $40,000.. The corporation counsel failed to prove facts in defence which were known to him, and which it was his plain duty to prove. After the judgment, although urged by the proper city authorities to take an appeal, he refused to do so. The supreme court, in general term, set aside. the judgment. Said the court : " Courts of law are not to be used by parties .in effecting, through the forms of law, the ruin of a party who has employed an incompetent, negligent, or unworthy attorney."

If such considerations can prevail, where only money or property is concerned, how much weightier should they be, in every rightly constituted mind, when a human life is in the balance. Modern civilization stands aghast at the barbarity of the ancient law which denied to a prisoner the aid of counsel " learned in the law," when on trial for his life. The wisdom and humanity of the present age demand that the maxim, " every man is presumed to know the law," shall be reversed, both in theory and in practice, when applied to the legal methods of conducting a defence against a charge of felony. Our state constitution (Art.

II., sect. 22) commands, that "in criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel;" and the legislative authority has supplemented this with the provision, that "if any person about to be arraigned upon an indictment for a felony be without counsel to conduct his defence, and be unable to employ any, it shall be the duty of the court to assign him counsel," etc. Rev. Stats., sect. 1844. To say that these beneficient requirements were satisfied in the circumstances of the present case, by the share taken in the proceedings by a licensed attorney, would be a mockery of the purposes of the constitution and the law. It would be a most unworthy exercise of the judicial function to administer the shadow of the law, but not its substance. We consider that the prisoner here, in effect, went to his trial and his doom without counsel, such as the law would secure to every person accused of crime.

The judgment is reversed and the cause remanded. Judge THOMPSON concurs; Judge BAKEWELL concurs in the result, but has not seen this completed opinion.