D. B. WELCH, *et al.*, v. LAURA A. CHALLEN.

PRACTICE; *"Unavoidable Casualty or Misfortune."* Where the plaintiff resides in Kansas and the defendants reside in another state, and the defendants employ an attorney in Kansas to file an answer and to attend to the case, but the attorney never files such answer, but before the time for filing the same has expired leaves the state of Kansas and never returns, and no answer is ever filed in the case, and after more than four months have elapsed after the defendants have made default by not filing an answer a judgment is rendered by default, in favor of the plaintiff and against the defendants, in accordance with the prayer of the plaintiff's petition, and the defendants have no knowledge of the negligence of their attorney, or of the rendition of such judgment, until a long time after both have occurred, and the attorney is insolvent, and the defendants have a good defense to the action, *held,* that neither the negligence of the attorney nor his insolvency, nor the defendants' want of knowledge, nor all combined, can be considered such an "unavoidable casualty or misfortune preventing the party from prosecuting or defending" the action that the defendants may have the judgment vacated under ⸹ 568 of the civil code, and they be let in to defend.

*Error from Marion District Court.*

THE record discloses the following facts: That the plaintiffs, *D. B. Welch* and *J. M. Estep,* are, and were at all the times mentioned in their petition herein, residents of the state of Ohio; that they filed their petition in the district court of Marion county on the 16th day of July, 1883, the allegations of which are substantially as follows:

That on the 28th day of September, 1881, the defendant, *Laura A. Challen,* filed her petition in said court against the plaintiffs, alleging that she was the owner in fee, and was possessed of certain lands, describing them, in said county, and that defendants claimed some title, interest and estate therein, adverse to her, the nature and amount of which was unknown to her, but whatever such title might be, it was invalid as against her title and possession, and prayed for the usual decree in actions to quiet title. This petition of defendant was set out in full in plaintiffs' petition herein.

Plaintiffs further alleged that said *Laura A. Challen,* upon

filing her said petition, caused a summons to be issued for the plaintiffs, which summons was served upon plaintiffs in Cadiz, Ohio, under the provisions of § 76 of the civil code, on the 15th day of November, 1881, and notified plaintiffs that they must answer the petition of said defendant within sixty days from the day of service of said summons; that at the time said summons was served, one W. B. Beebe, the agent of plaintiffs, was in said Marion county, and plaintiffs immediately informed said agent of the pendency of said suit, and directed him to at once take proper steps to defend the same; that said Beebe went to the attorney of said Laura A. Challen to ascertain when said action would come on for trial; that said attorney informed said Beebe that it would not be for trial at the then next ensuing term, because that term would commence before the time for answering would elapse; that plaintiffs and defendant had been corresponding with a view to an amicable adjustment of their differences, and said Beebe then requested defendant's attorney not to take any advantage of plaintiffs if they should fail to effect a settlement with defendant, but to afford them an opportunity to answer, and defend said action; that said attorney assured Beebe that he would take no advantage, but would allow plaintiffs ample time to answer and defend said action; that said Beebe then employed A. McKee, an attorney of the several courts of said county, to defend said action on behalf of the plaintiffs, and instructed him to file an answer to defendant's said petition at the proper time, and fully informed him of the nature of said suit, and stated to him fully the facts constituting plaintiffs' defense thereto, and said McKee promised and engaged to diligently attend to the interests of the plaintiffs in said action, and to keep them fully informed of the progress of the same, and of all matters necessary to be done in defense thereof; that said McKee was a lawyer of good character and standing at the bar of said county, and plaintiffs had every reason to and did believe that he would diligently attend to the defense of said suit in their behalf; that shortly after the said employ-

ment of said McKee to defend said action, the said Beebe returned to Harrison county, Ohio, and was not again in Marion county, Kansas, until long after said suit was tried and judgment rendered therein; that said McKee did not diligently attend to the defense of said suit, but wholly failed and neglected to take any steps whatever to protect the interests of plaintiffs or defend the same; that about the 25th of December, 1881, and before the time for filing an answer had expired, the said McKee left Marion county and the state of Kansas, and never returned; that he totally failed and neglected to do anything in pursuance of his said employment by plaintiffs, but permitted said suit to go by default, and never appeared in court to defend the same, and never informed the plaintiffs or said Beebe of his failure to file their answer and make defense to said action, and never informed them of his removal from the state of Kansas; that plaintiffs relied upon said McKee, as their attorney, to do everything necessary to be done in and about the defense of said action, and depended upon him to keep them fully advised concerning the same, and confiding in his supposed integrity and honesty, and further relying upon the aforesaid assurances of the defendant's said attorney, the plaintiffs took no further action toward defending said suit; that the plaintiffs had no knowledge of the time said action would be tried, and did not know that it had been tried and judgment rendered against them by default, until a long time thereafter, but, relying upon their said attorney to keep them fully advised, they supposed the said action was still pending in said court, and undetermined; that at the next term of said court, in May, 1882, said action was by said defendant's attorney called up for trial, and no one appearing for plaintiffs, judgment was taken by said defendant against the plaintiffs, by default.

(A copy of said judgment was inserted in said petition.)

Plaintiffs further averred that they received no notice that said action had been tried for more than six months thereafter; that they had a good and valid defense to said action; that said judgment was erroneous, unjust, and contrary to

equity and good conscience, and ought not to be permitted to stand; that said A. McKee was wholly insolvent and financially irresponsible, and plaintiffs were wholly remediless at law, and without adequate remedy, unless the court vacated said judgment and permitted them to defend; that the facts constituting their defense were as follows, viz.: that all the lands mentioned in defendant's petition were taxable for the year 1873, and the taxes assessed against them for said year not being paid, said lands were separately sold according to law by the county treasurer at the tax sale in May, 1874, and plaintiffs were the purchasers of the same; that plaintiffs paid the subsequent taxes thereof in 1874, 1875, 1876, 1877, 1878, 1879, and 1880; and on September 22, 1881, said lands were deeded by the county clerk to the plaintiffs, not having been redeemed by any one.

(Copies of said tax deeds were set out in said petition.)

Said petition then stated the amount of the subsequent taxes paid by plaintiffs on each of said pieces of land. Plaintiffs then denied that said defendant owned a fee-simple title and interest in said lands, and denied that she owned any interest or estate whatever in the same, and denied that she was in possession of said lands, or any part thereof, and averred that they, the plaintiffs, were the owners of said lands.

The prayer of said petition was:

"That said judgment be vacated, and plaintiffs allowed to defend; and that upon a trial of said action that they have judgment that they were the owners of said lands, and that their title to said lands be forever quieted as against said Laura A. Challen and all persons claiming under her, or that if the court should find the title of plaintiffs to be invalid, that then the full amount of taxes paid by them on said lands, together with all interest and costs allowed by law, be ascertained, and that they have judgment for the same."

The petition was duly verified by the said W. B. Beebe, the agent of the plaintiffs. Defendant demurred to this petition, on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was sustained

by the court on the 27th of August, 1883. This ruling the plaintiffs bring to this court.

*L. F. Keller*, for plaintiffs in error.

*Doster & Bogle*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: The principal questions involved in this case are the following: (1.) When, if ever, is the negligence of an attorney at law in permitting a judgment to be wrongfully rendered against his client such an "unavoidable casualty or misfortune, preventing the party from prosecuting or defending" the action, that the client may have the judgment vacated under § 568 of the civil code, and be let in to prosecute or defend the action? (2.) And if ever such negligence may be such an "unavoidable casualty or misfortune," was it such in the present case?

The principal fact set forth by the present plaintiffs as rendering the negligence of the attorney material, and as rendering it an "unavoidable casualty or misfortune," authorizing the vacation of the judgment rendered against them, is the fact that the attorney was and is insolvent; while the principal facts urged by the present defendant as rendering the negligence of the attorney immaterial, and not such an "unavoidable casualty or misfortune," are the facts that the said judgment was not rendered until more than four months after the attorney had committed his principal act of negligence, and was not rendered until the present plaintiffs had had ample time and opportunity to know of such negligence, and to employ other attorneys, and to take all necessary steps to defend the action. That action, as appears from the present plaintiffs' petition, was commenced on September 28, 1881. The summons was served upon the present plaintiffs (the then defendants) in Ohio, on November 15, 1881. The answer day was fixed for January 14, 1882. The plaintiffs, immediately after being served with summons,

through their agent, W. B. Beebe, who resided in Marion county, Kansas, employed an attorney, A. McKee, who also resided in Marion county, Kansas, and instructed McKee specially to file an answer in that case at the proper time, which, as before stated, was any time prior to January 15, 1882, and McKee agreed to do so; but he never did file such an answer, but before the time for filing the answer had expired, he left the state of Kansas, and has never returned. The agent, Beebe, also left the state of Kansas about the same time, and did not return to Kansas until after the judgment was rendered in the said case. The district court, in which said action was pending, was in session in January, 1882, but by an understanding between the parties no action was taken in the case at that term. At the next term of the district court, and on May 22, 1882, judgment was rendered by default, in favor of the present defendant, then plaintiff, and against the present plaintiffs, then defendants. The present plaintiffs had no knowledge of McKee's negligence, or of the rendition of this judgment, until long after both had actually occurred; and it does not appear that after McKee's employment they ever had any correspondence with either McKee or Beebe. It would seem, in fact, that they were also negligent, as well as their attorney and agent, McKee and Beebe.

Upon the foregoing facts, should the judgment rendered against the present plaintiffs be vacated, and they be allowed to defend in the original action? Under the authorities, we would think not. Mr. Freeman, in his work on Judgments, uses the following language:

"The neglect of an attorney or agent is uniformly treated as the neglect of the client or principal, except in New York. A default will not be opened because the attorney had prepared a demurrer, but had failed to file it by reason of his miscalculating the time when it was due; neither will relief be granted because the attorney forgot the day and time for trial. And in general no mistake, inadvertence or neglect, attributable to the attorney, can be successfully used as a ground for relief, unless it would have been excusable if attributable to the client." (Freeman on Judgments, § 112, and

cases there cited. See also 3 Pomeroy's Eq. Jur., § 1361, and cases there cited.)

The decisions from Wisconsin cited by the plaintiffs are not applicable to the present case, for they were made under a statute very different from the statutes of Kansas. The Wisconsin cases were decided under a statute which reads as follows:

"The court may, . . . in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding against him, through his mistake, inadvertence, surprise, or excusable neglect." (Rev. Stats. of Wis. of 1858, ch. 125, § 38; Rev. Stats. of Wis. of 1878, ch. 127, § 2832.)

But even if the statutes of Wisconsin were the same as those of Kansas, the decisions referred to would hardly be applicable to the present case, for reasons which will occur to anyone who will carefully read those decisions and this case. What has been said with reference to the Wisconsin cases we think may also be said with reference to the case of *Hildebrandt v. Robbecke*, 20 Minn. 100, though we are not sure from the meager report of the case. We would also think that the motion to set aside the judgment in the Minnesota case was made immediately after the rendition of the judgment, at the same term of the court at which the judgment was rendered, and upon sufficient grounds under such circumstances. (See further, *Merritt v. Putnam*, 7 Minn. 493.) The cases of *Sharp v. The Mayor, &c.*, 31 Barb. 578, and *Elston v. Schilling*, 7 Robt. (N. Y.) 74, were not decided by courts of last resort; and the case of *Meacham v. Dudley*, 6 Wend. 514, was not a proceeding to vacate a judgment—it was simply a motion to set aside a default. There are no other cases cited tending to sustain the views of the plaintiffs.

We would therefore think that, as a general rule, the negligence of an attorney in unnecessarily permitting a judgment to be rendered against his client is not sufficient to authorize the vacation of such judgment. There may be exceptions to this rule, and probably are, but we think the present case

comes clearly within the general rule and not within any ex-
ception.

The plaintiffs, however, claim that the insolvency of the
attorney will take this case out of the general rule; for, as
they claim, the plaintiffs would have no adequate remedy for
the loss they must suffer in having a judgment wrongfully
rendered against them, unless they have the right to have
such judgment vacated.   This would hardly seem to be a suf-
ficient ground for making an exception.   It was no fault of
the defendant that the plaintiffs employed an insolvent attor-
ney; and it would hardly seem proper, after a party has ob-
tained a judgment without any fault on his part, to say that
the judgment may be vacated and set aside provided that the
other party's attorney is insolvent, but that it may not be
vacated or set aside if such attorney is solvent.   If such a
doctrine should be sustained, then the value of a judgment
would often depend upon the solvency or the insolvency of
the attorney of the opposite party.   But this proceeding is
exclusively under § 568 of the civil code, which says nothing
about the solvency or the insolvency of the attorneys.   It pro-
vides that a judgment may be vacated "for unavoidable casu-
alty or misfortune preventing the party from prosecuting or
defending."   Now the insolvency of an attorney is not an
"unavoidable casualty" "preventing the party from prose-
cuting or defending;" nor is it an "unavoidable misfortune
preventing the party from prosecuting or defending."   No
party is bound to employ an insolvent attorney, and if he
does employ such an attorney the insolvency does not pre-
vent him from employing other attorneys, or from prosecut-
ing or defending his action.   The case may be prosecuted or
defended just as well with an insolvent attorney as without
him, or as with any other attorney.   We would therefore
think that the insolvency of the attorney cannot make any
difference.

Of course where the attorney, through some unavoidable
casualty or misfortune, is prevented from prosecuting or de-
fending the action, and the client has not been informed of

such casualty or misfortune within sufficient time to employ another attorney, the case would come within the provision of § 568 of the civil code of Kansas. For instance, if the attorney were in some distant city, and, on account of sudden sickness, or high waters, or some railroad accident, or other unforeseen event, could not reach the place of trial within time to prevent the judgment from being rendered against his client, and the client were also absent or otherwise incapacitated from attending to his case, the case would come within the provision of § 568 of the civil code; for in such a case, the casualty or misfortune preventing the attorney from prosecuting or defending the action would also be the client's casualty or misfortune. But none of the foregoing cases is the present case. In the present case, the attorney was not prevented from defending the action by any casualty or misfortune. Also, where a party moves to set aside a judgment immediately after its rendition, and at the same term at which it is rendered, it may be set aside for irregularities that would not authorize its being set aside if the application were made at some subsequent term.

Under the circumstances of this case, we cannot say that the court below erred in refusing to vacate the judgment rendered against the present plaintiffs. We cannot say that the negligence of the attorney, or his insolvency, or the present plaintiffs' (then defendants') want of knowledge of such negligence, or all combined, constitutes such an "unavoidable casualty or misfortune preventing the party from prosecuting or defending" the action, that the plaintiffs may have the judgment vacated under § 568 of the civil code, and they be let in to defend.

The judgment of the court below will be affirmed.

All the Justices concurring.