(75 Misc. Rep. 322.)

### PEOPLE v. DELAWARE & HUDSON CO.

(Supreme Court, Special Term, Albany County. January, 1912.)

1. NAVIGABLE WATERS (§ 36*)—LAND UNDER WATER—TITLE.

The title in fee to land under water in Island creek at Albany, a navigable stream in which the tide ebbs and flows, is in the state up to highwater mark, and an upland owner or lessee of lands on each side of the creek cannot acquire title to the land by filling up the creek.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–200; Dec. Dig. § 36.*]

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. NAVIGABLE WATERS (§ 37*) — RIGHTS OF RIPARIAN OWNERS — STATUTORY PROVISIONS.

Laws 1906, c. 689, § 1, providing that the bulkhead line of Island creek, in front of the city of Albany, is established according to a certain map, is not a grant by the city of its lands below the high-water mark out to the line fixed, but means that the city has established that line to fix the point beyond which no upland owner can go in erecting walls or docks for his accommodation in securing access to the navigable channel.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–227, 285; Dec. Dig. § 37.*]

3. NAVIGABLE WATERS (§ 26*)—OBSTRUCTION—ABATEMENT AND INJUNCTION.

A court may not only restrain any further filling in of land under water in a navigable creek, but may compel the removal of what has already been put in, since such filling in constitutes a nuisance.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

4. NAVIGABLE WATERS (§ 26*)—OBSTRUCTION—ABATEMENT AND INJUNCTION.

A court will restrain the erection of a trestle in a navigable creek over which railroad tracks run, and compel the removal of one already erected, in the absence of a grant of the land under water, though the trestle has been there for nearly 40 years prior to the action for its removal; no prescriptive right being thereby acquired.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

5. NAVIGABLE WATERS (§ 26*)—OBSTRUCTION—ABATEMENT AND INJUNCTION—CONDITIONS.

Where for nearly 40 years important industrial establishments have grown up on an island which depend for the conveyance of their freight on a railroad crossing a trestle built in the waters of a navigable creek, a court will not use the power of injunction against the company in such a way as to impair largely the commercial importance of the industrial interests affected.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

6. NAVIGABLE WATERS (§ 26*)—OBSTRUCTION—ABATEMENT AND INJUNCTION—CONDITIONS.

A railroad having a trestle built in the waters of a navigable creek upon which important industrial interests of an island which have grown up during a period of 40 years depend will be required to remove the trestle and its piles from the bed of the creek and to restore the original depth of the bed, so that navigation may be fully restored, but the granting of the injunction will be on condition that the railroad be permitted to build a draw, lift, or suspension bridge in place of the trestle to afford necessary railroad connection to the industries on the island.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

Action by the People against the Delaware & Hudson Company for an injunction. Judgment for plaintiff.

Thomas Carmody, Atty. Gen., and Wilber W. Chambers, Deputy Atty. Gen., for the People.

Lewis E. Carr, for defendant.

CHESTER, J. The action is brought for a mandatory injunction requiring the defendant to remove from Island creek certain encroachments and embankments placed therein by it, and to remove a certain

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

trestle or bridge crossing such creek and the supporting timbers thereunder erected by the defendant.

The complaint alleges that Island creek is a navigable stream, being an arm of the Hudson river in which the tide ebbs and flows, and that it has been used from time immemorial by the public for navigation. These allegations are not denied by the answer. The creek in question is from three to four miles in length, and forms the northerly, westerly, and southerly boundary of Rensselaer Island on the west side of the Hudson river. The defendant is the upland owner or lessee of lands for about a half mile in length, bordering on each side of the creek from the bridge crossing it at the southerly end of Green street in the city of Albany to a point some distance south of the trestle above named, and it is this portion only of the creek where it is claimed the encroachments have been made. The defendant's tracks and right of way for its railroad run along the northwesterly side of the creek between the points mentioned. This condition has existed since about 1870, when the Albany & Susquehanna Railroad Company leased all its property under a practically continuous lease to the President, Managers, and Company of the Delaware and Hudson Company, the name of which company has since been changed in due form of law to the Delaware & Hudson Company—the present defendant. Formerly the creek was much used for boating, pleasure, and business purposes; and steamboats drawing four or five feet of water as well as other smaller craft navigated the stream. The evidence shows very clearly that for some 20 years the defendant has been almost continuously dumping stone, ashes, and refuse matter on the banks of the creek on both sides and filling it in, so that its width has been very materially lessened in several places, and so that it is much more shallow than formerly. The evidence also shows that, as fast as the creek was filled in on the northwesterly side, additional tracks were built by the defendant on the made ground there. The extent of these encroachments on the sides of the creek is shown on plaintiff's exhibit 9. It also appears that about 1871 or 1872 the defendant erected a trestle or wooden bridge, supporting a single track, running across the creek at an angle of about 45 degrees, near the southerly end of the place in question, which trestle or bridge was supported by piles driven into the bed of the stream very close together. About 10 or 12 years ago this old trestle or bridge was taken away, the piles supporting it were sawed off near the water and left standing therein, and a new trestle or bridge was built along the easterly side of the old one, having thereon two tracks of the defendant's railroad, which bridge is supported by other piles driven into the bed of the stream. These piles are so thick that they dam up the creek to a considerable extent, so that a rowboat cannot pass through it at low tide. The piles cause rubbish and refuse floating in the stream to collect, settle, and to be anchored there. The water at that place, instead of being four or five feet deep as formerly, is now at low tide but two or three inches deep; and the tide does not ebb and flow at that point as formerly. It does not appear that the defendant ever had any grant from the state of lands under water at the place in

question, nor any license or grant of any kind to erect the trestle or bridge across the creek; yet it has been there in one form or another for somewhat less than 40 years before this action was begun. During that time many important industrial establishments have grown up on Rensselaer Island which depend upon the railroad across this trestle for the conveyance to them of their freight.

The Legislature in 1906 passed an act to provide for the improvement of the river front in the city of Albany. Laws 1906, c. 689. In section 1 of that act it was provided that:

"The bulkhead line of * * * Island creek, in front of the city of Albany is hereby fixed and established according to a map made by the city engineer of the city of Albany, dated May 22, 1903, and on file in the office of the superintendent of public works of the state of New York."

A copy of that map was filed in that office, and has been received in evidence. The defendant insists that the bulkhead line established by the act and shown upon the map amounts to a legislative declaration and covenant on the part of the state that at no time in the future will it require from the upland owners the possession and use of the land between that line and the original high-water mark line of Island creek; and therefore that the upland owners can fill in in front of their land to such bulkhead line without any interference on the part of the state and without being called upon by the state to remove therefrom.

[1] There can be no doubt that the fee of the land under water in navigable streams up to high-water mark is in the state (Illinois Central Railroad v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018); and, while the owner of the uplands has a right to occupy and use the land between high and low water mark for the purpose of building and maintaining docks thereon in order to get access to the navigable stream and for any other legitimate private purposes not inconsistent with the rights of the public (Sission v. Cummings, 35 Hun, 22), yet he cannot acquire title to the land under water belonging to the state by filling it up; and, as between him and the state, it stills remains "land under water" notwithstanding he has filled it in. Saunders v. N. Y. C. & H. R. R. R. Co., 144 N. Y. 75, 38 N. E. 992, 26 L. R. A. 378, 43 Am. St. Rep. 729; People ex rel. Blakslee v. Commissioners, 135 N. Y. 447, 32 N. E. 139.

[2] The establishment of a bulkhead line cannot in my opinion be deemed to be a grant by the state of its lands below high-water mark and out to such line, but it does mean that the state has established that line to fix the point beyond which no upland owner can go in erecting wharves or docks for his accommodation in securing access to the navigable channel.

[3] Where a riparian owner has filled in lands under water belonging to the state in a navigable stream, it is a nuisance, and as such the court has the power not only to restrain the party from further filling in, but also to compel him to remove what he has already put in. People v. Vanderbilt, 26 N. Y. 287; Id., 28 N. Y. 396, 84 Am. Dec. 351; People v. N. Y. & Staten Island Ferry Co., 68 N. Y. 71.

[4] The same principle applies with respect to the trestle maintained by the defendant over which its tracks run to get access to Rensselaer Island. The defendant insists, however, that the trestle has been maintained for such a length of time by the defendant that it has a prescriptive right to occupy and continue it there. A navigable stream is a public highway in which all the people of the state have an interest; and, in the absence of a provision making the state subject to the statute of limitations, no title by adverse possession can be acquired against it. 1 Cyc. 1112. In Burbank v. Fay, 65 N. Y. 57, it was held that an easement in the waters of the state canals cannot be obtained by prescription, and that no adverse use or occupancy, however long continued, will vest a title inconsistent with the public right or will impair or affect the rights of the state. The same principle has been held with respect to public highways. Driggs v. Phillips, 103 N. Y. 77, 8 N. E. 514; St. Vincent's Orphan Asylum v. City of Troy, 76 N. Y. 108, 32 Am. Rep. 286. I think it also applies to the situation here, and therefore that the defendant has not obtained a prescriptive right to maintain its bridge where it is in such a way as to impair the navigation of the creek in question.

[5] Nevertheless, I am inclined to believe that the court should not use the power of injunction as against this defendant in such a way as to impair the commercial importance to a considerable extent of the city of Albany, or to the serious detriment of the very important industrial interests that have grown up on Rensselaer Island and which must depend to a very great extent upon the railroad facilities, which at present are afforded only by the defendant at that locality.

[6] The defendant should be required to remove its bridge and its piles from the bed of the creek and to restore it to its original depth, so that its navigable qualities at that point may be fully restored; but this should be done on condition that the defendant be permitted to build a draw, lift, or suspension bridge there, which will in no way interfere with the navigation of the creek and which will afford a necessary railway connection to the industries upon the island.

The defendant shows that for many years certain sewers of the city of Albany have been discharged in the waters of Island creek. There is no evidence as to what, if any, extent these have impaired the navigability of the stream. It does appear, however, that the trestle and its supports and the supports of the old trestle dammed up the stream where they existed and have interfered with the ebb and flow of the tide therein. If it had not been for this obstruction, it can readily be seen that the constant ebbing and flowing of the tide would have been entirely adequate to have disposed of any sewage that has been allowed to enter the stream, and that alone would not to any perceptible degree have impaired its navigability.

I think the plaintiff is entitled to a judgment against the defendant, with costs, in accordance with the prayer for relief in the complaint, except that the defendant should be permitted to erect such a bridge over the creek as has been indicated, and that six months' time should be afforded to the defendant for the purpose of comply-

ing with the terms of judgment, with the privilege of applying to the court, upon due notice to the Attorney General, for an extension of such time, if it should prove to be inadequate.

Judgment for plaintiff.