### PEOPLE v. DELAWARE & HUDSON CO.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

Appeal from Special Term, Albany County.

Action by the People against the Delaware & Hudson Company for an injunction. From a judgment in favor of the plaintiff entered after a trial by the court (75 Misc. Rep. 322, 135 N. Y. Supp. 339), defendant appeals. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Lewis E. Carr, of Albany, for appellant.
Thomas Carmody, Atty. Gen. (Wilber W. Chambers, Deputy Atty. Gen., of Albany, of counsel), for the People.

PER CURIAM. Ordered that the judgment be modified to read as follows:

Adjudged that the plaintiffs, the People of the State of New York, have judgment that the defendant, the Delaware & Hudson Company, be and hereby is perpetually restrained and enjoined from continuing to use the trestle erected by it across Island creek, in the county of Albany, from and after the six months hereinafter mentioned, and is perpetually restrained and enjoined from continuing to encroach upon the bed and waters of said creek; and defendant is required and directed to remove the trestle and piles driven into the land under water underneath it within the bulkhead lines as established by chapter 689 of the Laws of 1906 within six months after service upon its attorney of a copy of this judgment with notice of entry. And it is further adjudged that defendant remove and take away, within six months, all the stone, cinders, and other substances with which defendant filled in the land under water of said creek between said bulkhead lines. And it is further adjudged that the plaintiffs recover of the defendant the sum of $125.91, costs of this action, as taxed by the clerk of this court. And it is further adjudged that the defendant as a condition of being required to remove its said bridge and trestle and the piles supporting it and of restoring Island creek to its former depth and width be permitted when that is done to build a draw, lift, or suspension bridge at the place of the present bridge which will not interfere with the navigation of said creek, and which will afford necessary railroad connection to Rensselaer Island, or, at its election, to build a bridge supported upon piers at practically the place of the old bridge, which shall leave an open clearance over the thread of the stream of not less than 50 feet in width and at least 2 feet greater in height than the present bridge, and that, in case the appellant shall elect to build a bridge other than a drawbridge, the respondents shall have the right at any time, should the reasonable use of the stream for navigation require, to apply to the court for a modification of the decree entered hereon by requiring the defendant, its successors and assigns, to so change the bridge as the public interests may seem to demand. And it is further adjudged that, in the event the defendant is unable to comply with the terms of this judgment within the six months mentioned, it is to have the privilege of applying to the court, upon due notice to the Attorney General, for an extension of such time.

And, as so modified, the judgment is affirmed, with costs to respondents. All concur, except BETTS, J., dissenting in opinion.

BETTS, J. (dissenting). Island creek, in the county of Albany, is a navigable stream, having its source and mouth in the Hudson River. It begins in the southern part of the city of Albany, runs west for a short distance, and then runs south about four miles, nearly parallel to the Hudson, to which it then returns. The case has to do with the northern part of Island creek shortly after it leaves the Hudson. It is or was a navigable stream, being an arm of the Hudson River, and the tide flows and ebbs therein.

Plaintiff brought this action, alleging such facts, and that the defendant had unlawfully erected various encroachments upon the bank and in the bed of this creek upon both the north and west sides, and also upon the east side, which east side is an island created by the flowing of this stream upon three sides of it and the Hudson River upon the east side. It was alleged that such action of the defendant constituted a public nuisance, and purprestures and obstructed navigation in the stream, and the prayer for relief was that the defendant be perpetually restrained and enjoined from continuing to encroach upon this stream, and compelled to forthwith remove these encroachments and obstructions, and to restore the stream to the same condition in which it was prior to the erection of them. The answer was a general denial, except that it admitted that the stream was a navigable one, in which the tide ebbs and flows, and that it had been used from time immemorial by the public for navigation. No affirmative defense was alleged, nor was it alleged that the encroachments and embankments and trestle placed in the stream by the defendant were erected by the authority of the state.

The case came on for trial before the trial court without a jury. The court found in favor of the plaintiff. See opinion, 75 Misc. Rep. 322, 135 N. Y. Supp. 339. Judgment was entered, and from it the defendant appeals to this court.

It appeared upon the trial that originally there was a single railroad track laid along that portion of the west shore of this Island creek in question here by the Albany & Susquehanna Railroad Company. This was about 1871. Subsequently that company leased the railroad property to the defendant. One or both of these railroad companies acquired some real estate on the east of this Island creek on the west shore of the island. A long time ago the defendant or its predecessor erected a trestle work and bridge on piles crossing this stream at an angle of 45 degrees from the mainland to this island. There were some iron industries on the island at that time, and a switch or branch of the railroad was laid across this trestle for the convenience of the railroad in serving these parties. A single track of railroad only was placed upon this bridge. Matters continued this way for some time, when the defendant took down this trestlework, sawing off the piles on which it was erected at about the level of the water as it then was at low tide and leaving the piles then sticking up without pulling them out of the stream, and alongside of it and just a little south placed in another trestle, and constructed a bridge at about the same angle as the first one was constructed, upon which it placed two tracks. It was shown that these piles and this trestle were placed in such a way that it was impossible now, and had been for some time, to get through there with a rowboat at high tide, and difficult to go through at low tide. Prior to the erection of this trestle there had been two boats at least, one by the name of "Maggie" and the other the "E. Corning," which ran on and in this Island creek. The Maggie was from 55 to 60 feet long, and the E. Corning was somewhat similar. They drew about four or five feet of water. Above the place where the contention between the plaintiff and the defendant arises, and at the foot of

Green street, in the city of Albany, was and is a bridge known as the Green Street bridge. These boats would run up and down through this Island creek, down as far as The Abbey, which was a hotel and popular resort upon the west bank, which has been there for a long time, and which is there yet. The people of the vicinity when they chose rode upon the Maggie and E. Corning for pleasure or fishing or for any purpose that they desired. Canal boats were also used in this creek at different times for the purpose of carrying away cabbage and other produce raised upon the island. This stream was used by various small crafts such as rowboats and the like, and the people of the southern section of the city of Albany and that vicinity used the stream for fishing and for pleasure; in fact, the action apparently was commenced on the petition of quite a large number of citizens of that vicinity to the Commissioners of the Land Office asking that the obstructions placed in this stream by the defendant be removed.

In addition to placing these trestles and bridges across this stream, the defendant filled in for 20 or more years stone, sand, cinders, dirt, and other materials upon the bank on both sides from this trestle and a short distance south of it north to nearly or quite to this Green Street bridge, and upon the land so created as fast as created it placed and erected other railroad tracks, so that now the evidence shows that in what was formerly this creek and the bank of the creek the defendant has several railroad tracks in constant use in its business as a railroad company, and that it has acquired no title from the state for the said user. It was shown that many years ago it brought many car loads of large stone, marble, or granite blocks weighing from one to three tons, and dumped them down this bank, and placed other material on top of them; in fact, photographs were submitted on the trial of men wheeling cinders and filling in the creek which it was testified to was done during the progress of the trial by the defendant. The plaintiff brought many witnesses to testify to the fact of the filling in and the encroachment by the defendant upon this stream upon both sides of it, and that as a result of this filling in of the stream it became unnavigable, particularly where this trestle was, and at low tide some witnesses had walked through it unharmed, where before had been many feet of water. It was shown that high water and the tides washed through this stream and cleaned it out, and kept it clear, and that with these obstructions the tide could not so act, as there was very little tide there now, and the stream was gradually shallowing from the defendant's filling it up. Not one word of testimony in denial of these acts of the defendant was introduced on the trial.

The plaintiff produced a copy of the original map that was filed when the Albany & Susquehanna Railroad was built showing the shore line of this creek; also a map showing the amount of filling in of the banks of the stream and obstructing the same that had been done by the defendant on both sides of the stream. This filling had continued for many years, and an immense quantity of material had been thus dumped in this stream. In the meantime the manufacturing plants upon the island had gradually increased. The Standard Oil Company has an immense plant there, as has the Texas Oil Company, and there

are foundries there doing a large amount of business, and employing a large number of men, and having a great amount of business for the railroad company. These parties have no other railroad track which they can use on the island, and there is no way for them to get to this island except by being carried across this creek in some way.

The defendant introduced in evidence chapter 689 of the Laws of 1906, which is entitled "An act to provide for the improvement of the river front in the city of Albany." Section 1 of that act is as follows:

"Section 1. The bulkhead line of the westerly shore of the Hudson River, the Albany Basin and Island creek, in front of the city of Albany is hereby fixed and established according to a map made by the city engineer of the city of Albany, dated May twenty-second, nineteen hundred and three, and on file in the office of the superintendent of public works of the state of New York."

It will be seen that section 2 of this chapter 689, Laws of 1906, supra, gives authority to the Commissioners of the Land Office in their discretion to grant, release, and convey by letters patent to the owner of any land and wharfage rights upon the westerly side of the Hudson River and Albany Basin, all the right, title, and interest of the state of New York of, in, and to the land under water in front of or adjacent to the land of such owner to said bulkhead, and gives no such rights to landowners on the westerly shore of the Island creek.

A portion only of this Island creek is in the city of Albany, although the line of the city of Albany and the adjoining town is not shown upon the map submitted, or at least on the maps left with me, and this statute only attempts to fix the bulkhead line in the city. The plaintiff claims no map of the kind referred to in the statute is on file in the office of the superintendent of public works, or has ever been there. The former city engineer of the city of Albany testifies that he took such a map and left it there for filing, but he did not know to whom it was given, or whether it was in fact filed or not, and there is nothing there to show that it was ever filed; no index nor any entry of any kind of any such map there. This defendant claims that it was entitled to fill in to this bulkhead line which was low-water mark; that is, it was entitled to fill in from high-water mark out to low-water mark. The plaintiff claims that this statute gave to the defendant no right to fill in between these points named in any event; that the only right that could be claimed under this act would be for an adjacent landowner to fill out to this bulkhead line a wharf or dock for the purpose of using this stream for the purpose of navigation; that the defendant had no idea whatever of using this stream for the purpose of navigation; that what it was trying to do and the evidence bears it out was to unlawfully appropriate all this land belonging to the state that it could for the purpose of placing its railroad tracks thereon, and adding to the value and capacity of its railroad, and I think this is correct.

The defendant farther argues that, since the railroad was used for a public purpose, the kind of public purpose for which it filled up this stream was immaterial, whether for navigation or for railroad

commerce, but I do not think this contention is sound. The defendant also claims that the state should not be permitted to assert this right to put it off this land because of the laches of the people, but the decisions are uniform that no right can thus be obtained against the state. The judgment entered upon the findings provided that the defendant should within six months after the close of the trial remove and take away all the stones, cinders, and other substances with which it filled in the land under water of the said creek, as shown on the map annexed to the complaint, so that the shore line be restored to its original condition as shown upon the dotted lines on that map, which dotted lines were the original shore lines, and that the creek be restored within said six months to the same condition as it existed before the erection of the said bridge and trestle, the driving of the piles in the land under water and the filling in of the creek, and an injunction was granted perpetually restraining the defendant from continuing to use the trestle from a period six months after service upon its attorney of a copy of this judgment with notice of entry, and then the court further—

"adjudged that the defendant, as a condition of being required to remove its said bridge and trestle and the piles supporting it, and of restoring Island creek to its former depth and width, be permitted, when that is done, to build a draw, lift, or suspension bridge at the place of the present bridge, which will not interfere with the navigation of such creek and which will afford necessary railroad connection to Rensselaer Island. And it is further adjudged that, in the event the defendant is unable to comply with the terms of this judgment within the six months mentioned, it is to have the privilege of applying to the court upon due notice to the Attorney General for an extension of such time."

It would seem that this provision was as fair to the defendant as it could ask or claim from the facts proven in this case. It was deliberately attempting to absorb the lands under the waters of this creek, and it has been restrained by the arm of the law from so doing, and directed to restore that which it removed, and compelled to undo that which it had done, and then, in order to protect its transportation business and to protect the people on the island who had built up their business relying on railroad service, this six months time is given for the erection of this bridge which I think is as much as equity is called upon to do for this defendant.

The defendant also tries to make the point that the extent of the dirt and obstruction which it is required to take out is not sufficiently clearly set forth in the findings and judgment to enable it to act intelligently, and it is fearful that it may be compelled to remove too much dirt. Naturally the defendant knows what it placed in this stream better than any one else can know that which it placed therein. It has been directed to remove all it placed there, and it was not shown that any one else had done any filling in along these shores. If that be the fact here, the defendant could well tell when it came to the original soil, as can any person tell the difference between the natural soil and the filled in soil, so I think that objection is entitled to no weight as against this judgment.

There may be some doubt as to whether a court of equity could grant permission to this defendant to put a bridge of any kind over this navigable stream. The plaintiff, however, has not appealed from that part of the judgment and Ft. Plain Bridge Co. v. Smith, 30 N. Y. 44–63, seems to be sufficient authority for that proposition, as the state is not objecting to that provision of the judgment.

Therefore the judgment appealed from should be affirmed, with costs.